SIMON YELLOWDAY v. MRS. ELIZA PERKINSON ET ALS.

(Filed 5 November, 1914.)

1. Pleadings—Answers—Counterclaim—Title to Lands—Slander of Title—Equity—Injunction—Trials—Nonsuit.

The right of a plaintiff to abandon his action and submit to a judgment of nonsuit at any time before verdict rendered, or what is tantamount to it, does not apply where the defendant has pleaded as a counterclaim a cause of action arising out of a contract or transaction set forth in the complaint as a ground· for the plaintiff's cause; and where in an action for the possession of land the defendant sets forth his title and, asking for injunctive relief, alleges the insolvency of the plaintiff, his frequent acts of trespass, and that his claim of title constitutes slander upon the defendant's title, depriving him of the opportunity to sell his land, etc., the plaintiff may not take a voluntary nonsuit and deprive the defendant of his right to try out the action to obtain the relief he has demanded.

2. Appeal and Error—Improper Remarks of Court—Objections and Exceptions—Presence of Jury.

The appellant may not urge for error on appeal improper remarks of the trial judge without duly noting an exception which appears of record; and certainly when it appears, as in this case, the remarks were not made in the hearing of the jury, or where the appellant is the plaintiff, and has not shown he has a cause of action.

APPEAL by plaintiff from *Cooke, J.,* at April Term, 1914, of WAKE.

This is an action for the recovery of land. The complaint declares that the plaintiff is the owner in fee simple and entitled to the immediate possession of the lands described.

The defendants deny the allegations of the complaint, and by way of further answer allege that the plaintiff had for many years repeatedly committed trespasses upon the lands of the defendants, known as the Perkinson lands; that he had frequently been indicted and convicted therefor, and served several terms upon the public roads on account thereof; that the lines between the property of the plaintiff and defendants had been processioned in the Superior Court of Wake County in 1905, and that the plaintiff still continued repeatedly to invade and trespass upon the lands of the defendants, to cut down and destroy standing and growing timber, wood and timber trees thereon; that plaintiff was insolvent, and that he was doing irreparable damage to the defendants.

That the plaintiff had the reputation of being a dangerous man; that his repeated acts of trespass and his claims to portions of the lands of the defendants had deprived the defendants of the opportunity to sell said lands, and constituted slanders upon the title thereof, and prayed "that the court in this action grant them an injunction permanently restraining and enjoining the plaintiff from trespassing upon and interfering with and damaging their said lands, and for such other and further relief as may be proper."

The plaintiff introduced certain deeds set out in the record, and among them a deed from R. A. Potter and wife, the plaintiff's immediate grantors, which describes the lands as set out in the complaint and contains the following covenant:

"And the said parties of the first part covenant to and with the party of the second part that they are seized of said premises in fee simple, and that they have the right to make this conveyance in fee simple; that the said premises are free from any encumbrances whatsoever, except a certain encumbrance for $500, which the party of the second part assumes to pay." The plaintiff, after introducing evidence to identify the lands in this latter deed as the same lands set out in the complaint, testified himself that he had been evicted about fourteen years before by the sheriff of Wake County from this very land, and that W. A. Mitchell was then living on same.

The defendants introduced the mortgage and the record of its foreclosure to which the lands were subject by the terms of the plaintiff's deed, and the deed executed thereunder by S. F. Mordecai, commissioner, to T. B. Crowder and N. M. Rand, and the deed by the latter to W. A. Mitchell, the party in possession of the lands described in the complaint at the time of the trial.

The defendants also introduced, for the purpose of showing that they were not in possession of any lands of the plaintiff, the record of the processioning proceeding above referred to and their own chain of title to the Perkinson lands.

They then introduced the surveyor appointed by the court in this action, who testified that he had surveyed both the lands described in the complaint and those of the defendants; that the southern line of the lands described in the complaint and the northern line of the defendants' lands, known as the Perkinson lands, was one and the same line, and was visible upon the lands, and evidenced by a heavy railroad tee-iron planted in the ground where the Perkinson tract crosses the old Lynn Adams line, and by an old ditch which extended a considerable distance; that it was also marked by an old hedge-row, and that at least one-third of its western course ran through woodland and was marked by trees. That the Perkinson line was also marked by iron stakes and passed over another heavy railroad tee-iron planted in the corner of Dock Adams. "That no part of the 84-acre tract of land being known as the Mitchell land and being the land described in the complaint lies south of the line as marked by the said iron stakes and railroad irons." All the issues were found in favor of the defendants, and the court gave judgment as set out in record, and granted the injunction as prayed by the defendants.

When the defendants introduced the mortgage from Potter and wife and the foreclosure proceeding, his Honor inquired as to whether or not the description in the mortgage from Potter to Jones and the decree of foreclosure above mentioned was the same description as called for by the plaintiff's deed, and the plaintiff's counsel, in response to his inquiry, said: "It looks like it." His Honor remarked aside in the hearing of those in front of him at the bar, but not in a tone audible to the jury: "You might as well be looking for the Hebrew children as for that land." No exception was taken to this remark, but thereafter the plaintiff moved to be allowed to submit to a judgment of nonsuit, which was refused, and plaintiff excepted. There was a verdict and judgment in favor of defendants, and plaintiff appealed.

*W. H. Lyon, Jr., and Douglass & Douglass for plaintiff.*
*R. N. Simms and Bart M. Gatling for defendants.*

ALLEN, J. The right of the plaintiff to submit to a judgment of nonsuit is accurately stated, as applied to different conditions of the pleadings, in *McNeill v. Lawton,* 97 N. C., 20, where the Court says: "Generally, a plaintiff may abandon his action and voluntarily submit to a judgment of nonsuit, at any time after bringing his action, and before the verdict of a jury, or what is tantamount to it. *Bank v. Stewart,* 93 N. C., 402, and the cases there cited. He cannot do so, however, under the present method of civil procedure, if the defendant has pleaded a counterclaim—a cause of action arising out of the contract or transaction set forth in the complaint as the grounds of the plaintiff's cause of action. In such case it is reasonable and just that the rights of the parties arising out of such contract or transaction shall be settled at the same time and in the same action, and that one party shall not be allowed to abandon the action without the consent of the other, until this shall be done. The plaintiff cannot justly complain if he is detained in court until the whole merits of his cause of action are tried and the rights of the defendant growing out of the same are settled, if the latter shall so desire. *Whedbee v. Leggett,* 92 N. C., 469. It is otherwise when the counterclaim is a cause of action arising independently of that alleged in the complaint, such as that allowed by the statute (The Code, sec. 244, par. 2). In that case the plaintiff may submit to a voluntary nonsuit as to his own cause of action; but he cannot, by doing so, put an end to the defendant's right to litigate his counterclaim. The action continues for that purpose, unless the defendant shall see fit to withdraw his counterclaim and thus abandon the action with which he has become identified, as seeking redress from the plaintiff, who becomes practically a defendant, while the defendant becomes a plaintiff in the action thus prolonged. *Whedbee v. Leggett, supra."*

The cases in support of these principles are collected in the annotations to section 1520 of Pell's Revisal.

If, therefore, the defendants have pleaded a counterclaim in the answer, his Honor was correct in refusing to dismiss the action.

In *Cheese Co. v. Pipkin,* 155 N. C., 397, the Court fully approved the definition and description of a counterclaim stated by *Justice Hoke* in *Smith v. French,* 141 N. C., 6, as follows: "Our statute on counterclaim is very broad in its scope and terms, is designed to enable parties litigant to settle well-nigh any and every phase of a given controversy in one and the same action, and should be liberally construed by the court in furtherance of this most desirable and beneficial purpose. Subject to the limitations expressed in this statute, a counterclaim includes well-nigh every kind of cross-demand existing in favor of defendant against the plaintiff in the same right, whether said demand be of a legal or an equitable nature. It is said to be broader in meaning than set-off, recoupment, or cross-action, and includes them all, and secures to defendant the full relief which a separate action at law, or a bill in chancery, or a cross-bill would have secured to him on the same state of facts."

These authorities establish the proposition that the plaintiff has no right to submit to a judgment of nonsuit without the consent of the defendant, and dismiss the action, if a counterclaim is pleaded, and that when facts are alleged which would entitle the defendant to maintain a separate action against the plaintiff, legal or equitable, they amount to a counterclaim.

Applying these principles to the pleadings, we are of opinion a counterclaim is alleged.

The defendants claim that they are the owners and in possession of the land, and the plaintiff is insolvent, and upon the facts alleged the defendants are entitled to injunctive relief, not as auxiliary to some other cause of action, but as a cause of action, it being the only relief available.

As was said in *Marshall v. Comrs.,* 89 N. C., 106: "The injunctive relief sought in this action is not merely auxiliary to the principal relief demanded, but it is the relief," and this was approved in *Hyatt v. DeHart,* 140 N. C., 271.

Other citations of authorities where actions have been sustained when the only relief sought was by injunction will be found in Pell's Revisal, sec. 819.

The objection to the remark of his Honor cannot be considered, because no exception was taken, and the case on appeal states that it was not made in the hearing of the jury.

It also appears upon the facts, not seriously controverted, that the plaintiff has no title to the land in controversy, and the remark could not have injured him.

No error.