W. W. LEWIS v. JOHN L. ROPER LUMBER COMPANY.

*Constructive Possession—Boundaries of Land—Grant of Island,*
*what passes by—Low-water mark—Evidence.*

1. Where an island in an unnavigable stream, or in a swamp, is granted
   by the name by which it is generally known, it is not necessary to
   run or call for lines and corners, the low-water margin of the island
   being more durable and preferable, as a certain description, to
   courses and distances.

2. By the grant of an island, designated by the name by which it is gen-
   erally known, all of the land surrounded by water at the low-water
   mark passes. Sudden accretions are not added to it, and when
   nature no longer marks the original line it is competent to prove
   by the testimony of living witnesses, or competent declarations of
   persons deceased, where the land was located when the land was
   granted.

3. The declarations of a deceased person as to the original low-water line
   of an island, made *ante litem motam*, and when declarant was dis-
   interested (though an adjacent land-owner), are competent evidence
   to show the location of the lines.

4. Where, in the trial of an issue relating to the location of the original
   margin of an island, there was testimony showing that trees had
   been marked, and one had disappeared, it was competent to show
   that another had been marked to show where the former stood.

CIVIL ACTION to recover damages for trespass to realty,
tried before *Hoke, J*, and a jury, at Special Term, 1892, of
WASHINGTON County Superior Court.

Plaintiff claimed under certain deeds introduced by him
extending back to 1817, and connected himself with these.
It was admitted title was out of State, being included in
bounds of Grant No. 447, and also in the Ann C. Blount
deeds, under both of which the defendant claims.

No lines, marks or corners are given in plaintiff's deeds,
the description in said deeds being " Canary, 107 acres, more
or less"; " Canary Island, on east side of Kendrick's creek ";
" Canary tract, near head of Lee's mill-pond, containing 100
acres, more or less." Kendrick's creek and Lee's mill-pond

proved to be same stream. Plaintiff showed that he and those under whom he claimed had been in the actual possession and continuous occupation of fourteen acres of said

[THE ABOVE MAP WAS INTRODUCED.]

land, having such amount under fence for the last fifty years, claiming to own same under his said deeds, and had during such time exercised various acts of ownership and possession

upon other parts of the *locus in quo* at different points from time to time, such as cutting wood, building roads, selling and moving timber, etc., claiming to own property under his said deeds.

Defendant introduced Grant No. 447, dated November 20, 1788, admitted to cover *locus in quo*, and introduced a line of deeds to connect defendant with such patent.

Oral testimony was also offered by both plaintiff and defendant, which is sufficiently adverted to in the opinion of Associate Justice Avery.

The defendant made the following exceptions to rulings of Court on questions of evidence:

1. On examination in chief, witness Abbott, the surveyor, testifies for defendant: Had stated in answer to a question by defendant that plaintiff Lewis had stated to him on survey that a certain cypress, claimed to be and now marked as a corner, had been so marked by said plaintiff. On cross-examination said witness was allowed to state that said plaintiff in said conversation, and as a part of same statement, had said he had so marked said cypress near location of an old corner now down, and to perpetuate its place.

Defendant's objection overruled, and defendant excepted.

2. A witness, Chesson, in testifying to the location of the Beach corner, had stated that it was pointed out to him by Jordan Volivay as a corner of Lewis' Canary tract. Jordan Volivay was admitted to be dead, and before litigation.

Defendant objected to evidence because it had appeared that said declarant owned land adjacent to *locus in quo.* Overruled, and defendant excepts.

Defendant requested Court to charge jury as follows:

1. That plaintiff has had under fence about fourteen acres of the land claimed by him, and as to that land his rights are admitted. But plaintiff also insists that he is the owner of all the land within the boundaries claimed by him at the time of the alleged trespass—

(1) Because the possession of the said fourteen acres extends by construction the possession of the plaintiff to the entire land within the boundaries named by him.

(2) Because the various acts of ownership and possession stated by him and his witnesses are sufficient to give him title and possession to the same. To establish these positions the plaintiff must show that he claimed up to known and visible boundaries, and the Court charges you that the plaintiff has failed to show such known and visible boundaries as are required by law, and you must answer the first issue, No.

The Court, after stating nature of controversy and position of parties on matters excepted to, charged the jury as follows:

"Plaintiff shows no grant for land to him or those under whom he claims, but contends his title is perfected by continuous occupation under a deed and claim of right. When title out of State by grant, a title can be perfected by adverse possession for seven consecutive years under claim of right open and notorious, and under a deed having known and visible lines and boundaries.

"If jury believes evidence, plaintiff has been in possession of a house and field on said land under a deed since 1826, actually occupying house and cultivating field, and was so occupying under a deed describing land, in some of his deeds as Canary, and in some of his deeds as Canary Island. It is claimed by plaintiff that these terms in his deed as Canary and Canary Island give to his tract such definite description, and the boundaries, as proved by him, so define and mark out a claim as to be a tract of known and visible lines and boundaries, and covers claim in solid red lines 1, 2, 3, 4, 5, 6, 7 and 8. Defendant contends that Canary and Canary Island was the smaller tract in red dotted limits; that the term itself meant a smaller tract of fourteen or fifteen acres, under plaintiff's fence; and that beyond the fence there are no marks or boundaries to indicate extent of plaintiff's claim,

nothing to warn the true owner that his limits were being occupied under an adverse claim, nor the extent of boundary of such claim.

"The usual terms of the law and requirements are that the deed should describe the land and boundaries—boundaries that would indicate to the true owners its nature, location and extent of the land claimed under the deed, and warn such owner that his lands were being trespassed upon. If the courses and natural boundaries of Canary were of such a character and sufficiently numerous so to define and point out the plaintiff's claim—sufficient to make the adverse claim and occupation open and notorious, open and visible to the true owners in the exercise of ordinary diligence—then the continuous occupation of the plaintiff or his father for seven continuous years, in such boundaries and under deed having such description, would perfect their title to the boundaries of the deed, and answer to issue should be Yes. And this would be true even if the lines running from corner to corner were not marked. But if Canary or Canary Island was the smaller tract, or amount under fence, or if the outer boundaries of plaintiff's claim were not open and visible, not sufficiently plain and numerous to point out and mark this tract, informing the true owner of its nature and extent, then the ownership of plaintiff would be confined to his actual occupation, under fence, and answer of jury should be only of portion under fence."

There was verdict for plaintiff, and defendant moved for new trial—

(1) On his exceptions on questions of evidence above pointed out.

(2) Refusal of Court to give instructions as requested by him.

(3) To the portion of charge as given and set out in case.

Motion refused, and judgment on verdict for plaintiff, and defendant appealed.

*Mr. A. O. Gaylord*, for plaintiff.
*Mr. W. D. Pruden*, for defendant (appellant).

AVERY, J.: It is admitted that the title to the land in controversy has passed out of the State, and that the plaintiff and those under whom he claims have had an actual possession, including about fourteen acres enclosed under fence, for about fifty years. In order to establish certain lines and corners claimed as the boundaries, and to show constructive possession up to them, the plaintiff W. W. Lewis offered the deed of his father, William Lewis, to himself, dated May 7, 1854, conveying a tract of land described as "Canary, containing 127 acres"; the deed of Clarissa Leggett to said William Lewis, dated the 20th of September, 1827, and conveying a tract of land described as "Canary Island, East Kendrick creek"; also a deed from Henry Hardy to William Lewis, dated August 26, 1828, and conveying a tract of land described as "Canary Island, 100 acres, more or less." There were two older conveyances offered also—one describing the tract conveyed as "Canary," the other as the "East Lee Mill-pond Covant tract, 100 acres, more or less." The plaintiff contended that he had offered testimony tending to show that the tract of land was known both as "Canary" and "Canary Island," which were generally understood to mean the same tract; that it lay adjacent to Kendrick's creek on East Lee mill-pond, which two names described the same body of water, and tending also to designate the known boundaries of the island and to point out corners, which, as points upon lines, would indicate the exact location of the boundary around the whole tract The defendant admitted that the plaintiff had acquired title to his enclosure, but contended that he had not offered sufficient evidence to go to the jury upon the question of the location of the lines. The plaintiff testified that the description Canary or Canary Island was used to describe a tract of land which was more definitely designated in two ways—(1) by certain corners at different angles on the

outside boundary; (2) by including "the high land surrounded by the dismal." It was in evidence also that the water originally extended to some of these lines and corners, but had receded on account of the more recent drainage. The witness testified that one Volivay pointed out the lines that included the high lands bounded by the dismal. Though there was conflicting evidence as to the extent of the high lands, still there was testimony tending to show that the lines pointed out by Volivay, the owner of an adjacent tract, was the original high land not covered by the water at its ordinary height, though it was in evidence that not more than one and a half acres, including the plaintiff's dwelling-house, was above the high-water mark in great freshets. The plaintiff testified that the corners shown by himself to the surveyor were on the margin of the high land, as pointed out by Volivay, and marked angles on the original water-line. In the absence of any evidence as to corners, the Court might have left the question of the location of the boundary lines claimed by the plaintiff upon the declaration of Volivay that it was governed by the original extent of the high lands or land not covered by the dismal.

When an island in an unnavigable stream or in a swamp is granted by the name by which it is generally known, it is not necessary to run or call for lines and corners. The low-water margin of the island is esteemed more durable and preferable, as a certain description, to courses and distances. Tiedman, sections 836 and 838.

The testimony of the plaintiff is clearly susceptible of the construction that the deceased declarant, Volivay, had pointed out the original low-water line, which is still indicated by corners marked at some of the angles along said marginal line, though subsequent drainage may have caused the water to recede and leave a larger area uncovered in the ordinary condition of the swamp. Such enlargement of the original island by artificial means was not an accretion that enured to the plaintiff's benefit, and, if not, it was compe-

tent as in all such cases to show the original low-water line as defining the limits of the island when granted. Tiedman, section 685 *et seq.;* Malone on R. P., p. 253. It is not necessary to cite authority to show that by the grant of an island, designated by the name by which it is generally known, all of the land surrounded by water at the low-water mark passes. When once it does so pass, sudden accretions are not added to it, and when nature no longer marks the original line man may prove by oral testimony of living witnesses or competent declarations of persons deceased where the land was located when the land was granted.

Without passing upon the sufficiency of the proof of course and distance offered, we think, therefore, that there was testimony upon which the jury might have located Canary or Canary Island by the original extent of the high lands. The question whether the greater weight of testimony was upon the one side or the other was not one addressed to the Court below, and is not to be considered by us. However the boundaries of his deed may be ascertained, when located the law presumes that the plaintiff claimed up to them. *McLean* v. *Smith,* 106 N. C., 172; *Ruffin* v. *Overby,* 105 N. C., 78.

The plaintiff testified that the declarations of Volivay were made *ante litem motam* and when Volivay was disinterested, and this was not denied. Though he was an adjacent landowner at the time, his declarations were nevertheless competent. *Bethea* v. *Byrd,* 95 N. C., 309; *Dugger* v. *McKesson,* 100 N. C., 1; *Fry* v. *Curry,* 103 N. C., 203.

For the reasons given, we think that there was no error in submitting the question of the extent of the plaintiff's boundary to the jury. The testimony as to the marking of corner trees was competent, if for no other pupose, as corroborative evidence to show that marks were made to indicate the margin of the original island, and when one tree originally marked had disappeared, it was competent to show that another was marked to designate where it had stood.

There was                                        No Error.