ELLA C. THOMPSON AND VIRGINIA P. CIBOTTI v. STOKES BUCHANAN, MRS. BERTIE M. WILSON AND R. B. BUCHANAN.

(Filed 22 February, 1928.)

**1. Pleadings—Counterclaim—When Can Be Pleaded—Action—Joinder—Actions in Tort, on Contract.**

Where the plaintiffs' action is to establish their title to and recover possession of mineral interest in a described 5-acre tract of land, and defendants set up as a counterclaim damages alleged to have been caused by the plaintiffs' slander of their title in 500-acre tract: *Held*, the cross-action alleged is for damages founded upon a tort, and not on contract, and does not fall within the equitable principle of a suit to quiet title, under the provisions of C. S., 519, 521, 522, and a demurrer thereto is good.

**2. Evidence Competency—Ancient Records.**

Where the plaintiff's right of recovery for mineral interests on a described tract of land, both parties claiming under a common source, is made to depend upon a transfer to plaintiff's antecedent in the chain of title by a recorded paper-writing stating that the grantor in the deed acted solely as the agent for the plaintiff's predecessor in title, and appeared on the registration books as a part of the transaction in regular sequence, though not likewise ordered registered: *Held*, this record undisputed for a long lapse of time will become admissible as an ancient record, and its exclusion will be held reversible error to the plaintiff's prejudice.

APPEAL by plaintiffs from *McElroy, J.,* at July Term, 1927, of MITCHELL. Reversed.

The plaintiffs allege that they "are the owners of and entitled to the immediate possession of all the mineral interest, right and title in and to and upon the following described tract or parcel of land: Situate in Mitchell County, State of North Carolina, on the waters of Cane Creek, beginning on a walnut tree marked 'A' on the Turnpike Road and runs thence a near northwest course to a hole in the ground near the top of a ridge, and near a shaft which was sunk by Love and Company; thence 5° south of west to Charles Burleson's old line; thence with his old line up to said Burleson's line established between him and Jeremiah Hughes; thence with that line to the branch; thence with the branch to the Turnpike Road; thence with the road to the beginning, containing five acres, more or less. That the defendants are in the wrongful and unlawful possession of the mineral interest in and to and upon the aforesaid described tract or parcel of land withholding the same from the plaintiffs."

The defendant, R. B. Buchanan, filed a disclaimer. The other defendants, Stokes Buchanan and Mrs. Bertie M. Wilson, deny the allegations of the complaint. They further answer and allege that they are the owners in fee of 500 acres more or less of land, describing same, "except the defendants, Stokes Buchanan and Bertie M. Wilson, disclaim title to the mines and mineral interest in that small parcel of land included within the red lines, and indicated by the red figures, 1, 2, 3, 4, 5, and 6, on the map hereto attached and filed with this answer as a part thereof, said land being more particularly described and bounded as follows: Beginning on a walnut tree now standing on the north bank of the public road leading from Bakersville to Henson's Creek, and indicated on said map by the red figure 1, and runs north 53° 30' west 30½ poles to a hole near the top of the ridge and near a shaft which was sunk by Love and Company, as indicated on said map by the red figure 2; thence south 85° west about 12 feet to a stake in Charles Burleson's old line, as indicated on map by figure 3; thence with his old line, north 80° west 30 feet to a stake in said old line, as indicated on said map by the figure (red) 4; thence near east to the branch as indicated on the map by the red figure 5; thence down and with the branch to the public road, aforesaid as indicated on said map by the red figure 6, thence to the beginning, red figure 1."

They further set up, as a counterclaim to remove cloud from title and damages for "Unfounded claims of title to and ownership of the mineral interest, mines, mica and feldspar in the said 500-acre tract hereinbefore described and especially to the Hawk Mines located on said tract, which these defendants leased to various parties for the purpose of being

operated and mined for mica," and sets forth in detail the conduct of plaintiffs in slandering the title so that it could not be leased by the answering defendants, and pray: "That they be declared the owners of the mineral interest in the 500-acre tract, except that small strip within the red lines on the map filed herewith, together with the surface or soil in a large part of said tract, thereby removing the cloud from the title. For damages against the plaintiffs in the sum of $5,000. For costs of action and for such other and further relief as to the court may seem right and just."

The record discloses that plaintiffs demurred *ore tenus* to the counter-claim set up by the answer of the defendant. This demurrer the court overruled and plaintiffs excepted and assigned error. The defendants ask that the trial of their cross-action be proceeded with, which motion the court denied and the cross-action continued to the next term of court.

Plaintiffs offered in evidence certain deeds and lease, together with the transfer of said lease from J. K. Irby, Jr., to Heap and Clapp. Defendants objected to the transfer on the ground that there is no proof of the transfer and no order of registration of the transfer. The court admitted so much of said instrument as precedes the transfer signed by J. K. Irby, Jr., and excluded such purported transfer and the affidavit of J. K. Irby, Jr. To the ruling of the court excluding such transfer and affidavit, plaintiffs excepted and assigned error. Plaintiffs offered affidavit of J. K. Irby, Jr., dated 18 July, 1872, and registered as a declaration of trust on the part of J. K. Irby, Jr. Defendants objected and the court sustained their objection and plaintiffs excepted and as-signed error.

It is admitted that the deed from Charles Burleson to J. W. Bowman, dated 12 May, 1872, and the deed from J. W. Bowman to Heap and Clapp, dated 13 July, 1872, and the agreement of lease between Charles Burleson and J. K. Irby, which has been admitted by the court, and the purported assignment made by J. K. Irby, and the affidavit of J. K. Irby, which was excluded by the court, follow each other in the order named in Book 7-A. The deed from Charles Burleson to J. W. Bowman, which was executed on 12 May, 1872, was registered 18 October, 1872. The deed from J. W. Bowman to John G. Heap and Elisha B. Clapp, of date 13 July, 1872, was registered 18 October, 1872. The lease from Charles Burleson to J. K. Irby, of date 17 August, 1872, was registered 19 October, 1872. The assignment of J. K. Irby and the affidavit of J. K. Irby, which were excluded by the court, were likewise registered 19 October, 1872.

After reading the several deeds offered by plaintiffs, the court stated that he would hold the deed from Charles Burleson to J. W. Bowman,

under which plaintiffs claim as a necessary link in their chain of title, void for uncertainty in the description, in the absence of a lease to Heap and Clapp in evidence and that both sides claiming under the same source of title under the admissions heretofore made plaintiffs could not recover, plaintiffs admitting that said deed was a necessary link in their chain of title connecting with the common source and also admitting that the purported lease, transfer and affidavit, as hereinbefore mentioned, were lost and the originals could not be produced in evidence. To the foregoing holding of the court plaintiffs except, and in deference to such holding submit to a nonsuit, excepted, assigned error and appealed to the Supreme Court.

Plaintiffs offered deed from William Buchanan to Charles Burleson, dated 16 June, 1857, registered in Book 6, p. 164, on 8 May, 1868, in the office of the register of deeds of Mitchell County. The deed is proper in form, describes the land by metes and bounds "containing 500 acres more or less." It is admitted that both parties claim under this deed as a common source of title.

*W. B. Council and Squires & Whisnant for plaintiffs.*
*W. C. Newland, S. J. Ervin and S. J. Ervin, Jr., for defendants.*

CLARKSON, J. The first main proposition to be determined: Should the demurrer of plaintiffs to the counterclaim of defendants be sustained? We think so. The law in regard to "Slander of property" is stated in Newell Slander and Libel, 4th ed., part sec. 160, p. 196, as follows: "It permits an action to be brought against anyone who falsely and maliciously defames property, either real or personal, of another, and thereby causes him some special pecuniary damage or loss. As in all other actions dependent upon special damages there must be injury, and damage, the injurious words falsely and maliciously spoken, and the damage, the consequent pecuniary loss to the party whose property is defamed. There can be no action except for the injury, the slanderous words, and no recovery except for special damages." The counterclaim broadly taken is an independent separate cross-action, not related to the main cause of action stated in the complaint.

The allegations in defendants' counterclaim set out fully the slander of title to the 500-acre, more or less, tract of land and demand for damages. This counterclaim is not to quiet title to the *locus in quo*— the five (5) acres more or less claimed by plaintiffs—as in *McLean v. McDonald,* 173 N. C., p. 429, but is an independent separate cross-action in tort and does not come under a most liberal construction of C. S., 519, 521 and 522. *Devries v. Warren,* 82 N. C., p. 356; *Gibson v. Barbour,* 100 N. C., 192; *Smith v. Young,* 109 N. C., p. 224; *Yellow-*

*day v. Perkinson,* 167 N. C., 144; *Cohoon v. Cooper,* 186 N. C., 26. See
*Shearer v. Herring,* 189 N. C., 460.

It is said in *Milling Co. v. Finlay,* 110 N. C., p. 412: "It is not
necessary that we consider whether there was any evidence sufficient to
go to the jury to support defendants' counterclaim, for we concur with
his Honor that the slander charged as the basis thereof was not a
counterclaim that could be pleaded to this action. The plaintiff com-
plains that the defendants being indebted to it, accepted a draft drawn
on them by the plaintiff and have failed to pay it. The defendants al-
lege that the plaintiff slandered them as to their pecuniary standing,
and injured their credit and business and seek damages therefor by way
of counterclaim. This did not arise out of contract, and therefore could
not be pleaded under subsection 2 of section 244 of The Code (C. S.,
521) ; nor could it be pleaded under the first subsection thereof, because
it did not 'arise out of the contract or transaction which was the ground
of the plaintiff's claim,' nor was it 'connected with the subject of the
action'—the contract made by the acceptance of plaintiff's draft. *Byerly
v. Humphrey,* 95 N. C., 151." The demurrer to the counterclaim should
have been sustained.

The second main proposition to be determined: Was the lease, assign-
ment or transfer and affidavit admissible as evidence? We think so. It
is taken for granted, from the record, that J. K. Irby and J. K. Irby,
Jr., are one and the same person. The deed from Chas. Burleson to
J. W. Bowman, was made 12 May, 1872, and the same day acknowl-
edged by the grantor before the probate judge and ordered to be reg-
istered, and duly recorded 18 October, 1872, and was a necessary link
in the chain of title on the part of plaintiffs. It refers to a lease to
Heap and Clapp to make certain the description of the land for which
plaintiffs bring this action. The record discloses "plaintiffs admitting
that said deed was a necessary link in their chain of title connecting
with the common source and also admitting that the purported lease,
transfer and affidavit, as hereinbefore set out, were lost and the originals
could not be produced in evidence."

The purported lease was made on 17 August, 1871, by Chas. Burleson
to J. K. Irby. The description in the lease corresponds in substance
to the description to the land set forth in the complaint, for which the
action is instituted. On the lease from Burleson to Irby is the following:
"I hereby transfer all my right, title and interest to the within lease
to Heap and Clapp for value received. This 19 August, 1871. J. K.
Irby, Jr."

Then there is an affidavit from Irby, dated 18 July, 1872, sworn to
before the clerk. Among other statements is the following: "That he,
the said J. K. Irby, obtained the said lease from said Burleson as the

right of Heap and Clapp, and although he put his own name in the lease as lessee that he was only an agent, as aforesaid, and that Heap and Clapp were and are the real lessees and the only parties interested, and that Charles Burleson so understood the matter at the time that the above lease is the one or the paper described and referred to in a conveyance made by Charles Burleson to J. W. Bowman on 12 May, 1872, and the only lease which Heap and Clapp had from Burleson for said mines and that Heap and Clapp have been operating said mines for some time under said lease."

The deed, lease, assignment or transfer and affidavit follow each other in the order named, and all are recorded on 18 and 19 October, 1872. The lease, assignment or transfer and affidavit were all recorded as parts of the same instrument on 19 October, 1872. It seems that this is indicated by the record, but at least are recorded in consecutive order at the same time.

It is contended by plaintiffs that although the originals of the lease, assignment or transfer and the affidavit (the latter argued by plaintiffs a declaration of trust), are all lost, they are admissible as an ancient record. If they are not admissible as tending to make certain the description in the Burleson deed to Bowman, the action of plaintiffs cannot be sustained. We think that although the originals are lost and not required to be recorded, yet spread on the records for 55 years, in the office of the register of deeds, is such an ancient record that imports verity and truth and ordinarily admissible at least as prima facie evidence.

The principle is stated thus in Wigmore on Evidence, 4 Vol. 2 ed., part sec. 2143, subsec. 5, p. 569: "Where the alleged ancient *original* is *lost* (or otherwise unavailable), and a purporting *official record* is offered, made more than thirty years before, and certifying the deed's contents and execution, but inadmissible as an official record *(ante,* 1648-1649), because not made in accordance with statutory provisions may not this ancient record-copy serve as sufficient evidence of genuineness? It is apparent that the case is not only as strong as the preceding one, but is stronger in two respects, namely, the defects of the record are in a measure technical only and it still is entitled to some consideration as an official statement, and the long publicity of it has given ample opportunity for correction and opposition if any just ground existed for doubting the original authenticity. Accordingly, there has been a general disposition, on one ground or another, to accept such an ancient record, though otherwise inadmissible, as sufficient, after the lapse of time. . . . This conclusion has been usually accepted. The rulings to the contrary seem rarely, if ever, to have gone upon any supposition that the ancient document rule was in itself impossible to apply to a

copy, but rather upon the lack of confirming circumstances in the case in hand. Moreover, the fact of possession of the land, as a confirming circumstance, seems often to be here insisted upon, irrespective of its general requirement." *Cedar Works v. Pinnix,* 208 Fed., 785; *Davis v. Higgins,* 91 N. C., p. 382; *Nicholson v. Lumber Co.,* 156 N. C., 59. The execution of the lease was duly proven and certified to be registered, and the lease, assignment or transfer and affidavit, are all recorded in consecutive order. The hearsay rule gives way to the ancient doctrine rule and is admissible ordinarily at least as prima facie evidence of the truth of the contents.

For the reasons given the judgment of the court below is

Reversed.