J. W. TESENEER AND WIFE, M. J. TESENEER, v. HENRIETTA MILLS
COMPANY.

(Filed 18 March, 1936.)

1. **Trial D a—Upon motion to nonsuit, all the evidence must be considered in light most favorable to plaintiff.**

   Upon a motion as of nonsuit, all the evidence which makes for plaintiff's claim or tends to support his cause of action is to be considered in its most favorable light for plaintiff, and he is entitled to every reasonable intendment thereon and every reasonable inference therefrom, and only the evidence favorable to plaintiff will be considered. C. S., 567.

2. **Limitation of Actions A c—Action for trespass based on damage to land from ponded water held not barred by three-year statute.**

   The evidence favorable to plaintiffs tended to show that defendant's dam had been erected for over twenty years, that defendant had periodically opened the flood gates and cleaned the pond, that for several years prior to the institution of the action defendant had not so cleaned the pond, and that the bed of the stream had gradually built up, and that after heavy rains the water was ponded on plaintiffs' land and deposited sand thereon until at the time of institution of the action the sand was over two feet in depth, rendering it unfit for cultivation, but that the land had not been substantially damaged or rendered unfit for cultivation except during the two years prior to the institution of the action. *Held:* Whether the action was barred by the three-year statute of limitations was properly submitted to the jury upon the evidence under instructions that if all the damage was caused by a wrongful act committed more than three years before the institution of the action, the action was barred, and that recovery of all damage inflicted more than three years prior to the institution of the action was barred, and the jury's finding from the evidence that the action was not barred is upheld. C. S., 441 (3).

3. **Waters and Water Courses C b—Evidence held for jury on question of damage to land from defendant's wrongful operation of dam.**

   Plaintiffs' evidence tended to show that defendant had periodically opened the flood gates of its dam and cleaned the pond for many years prior to the institution of the action, and that plaintiffs' land during this time had not been substantially damaged, but that for several years prior to the institution of the action defendant had not cleaned the pond because of the scarcity of water, that the bed of the stream had gradually filled up so that any heavy rain caused the water to overflow plaintiffs' land and deposit sand thereon, rendering the land incapable of cultivation, and that the sand was deposited by reason of the ponding of still water thereon, and the failure to clean out the sand from the stream bed above the dam. *Held:* The evidence was sufficient to be submitted to the jury on the issue of defendant's negligent operation of the dam and damage resulting therefrom.

4. **Damages H b—Admission of evidence of value of land prior to period for which damages are sought held not error under the facts.**

   Plaintiffs instituted this action to recover damages to their land for the three years prior to the institution of the suit, the injury to the land result-

ing from defendant's wrongful act causing sand to be deposited thereon by ponded water. Plaintiffs were allowed to introduce evidence of the value of the land prior to the three years in controversy. *Held:* The admission of the testimony cannot be held for reversible error, since a certain latitude must be allowed in the introduction of evidence bearing on the question of damage, and since it appears that defendant introduced testimony of the value of the land prior to the three-year period in conflict with plaintiff's evidence.

5. **Evidence K b—Admission of opinion testimony that defendant's dam caused stream to deposit sand on plaintiffs' land held not error.**

The male plaintiff was allowed to testify to the effect that defendant's dam caused large quantities of sand to be deposited on plaintiffs' land by ponding water thereon. Plaintiffs' expert witness testified to the same effect without objection, as did other nonexpert witnesses for plaintiffs. *Held:* An exception to the admission of plaintiff's testimony cannot be sustained, the testimony being of a common condition not capable of being made palpable to the jury and being based upon plaintiff's observations made at the time.

6. **Appeal and Error J e—**

Ordinarily, an exception to the admission of incompetent evidence cannot be sustained when it appears that testimony of like import was theretofore and thereafter admitted without objection.

7. **Trial F d—**

Where defendant does not object to issues tendered by plaintiff or tender other issues, his exception to the issues ordinarily will not be considered on appeal.

8. **Trial E g—**

The court's charge to the jury will be construed contextually as a whole.

9. **Easements A e—Where permanent damage is awarded for injury to land, defendant is entitled to an easement therein.**

Where permanent damages are allowed for damage resulting to plaintiffs' land from defendant's ponding of water thereon, the judgment should grant defendant, its successors and assigns, an easement to pond water on the land in controversy.

APPEAL by defendant from *Harding, J.,* and a jury, at Regular September Term, 1935, of RUTHERFORD. No error.

This was a civil action, instituted by plaintiffs against the defendant, to recover damages to land alleged to be the result of the negligent construction and operation of the power dam below the land owned by plaintiffs.

The plaintiffs allege, in part:

"That the construction of the said dam has caused the bed of the said river to gradually fill up over a period of several years with silt and sand and debris several feet deep, and has caused the bed of the said stream for several miles above the said dam to be several feet higher than it was originally; that included in the plaintiffs' tract of land herein-

above described are about 20 acres of river bottom land lying on the west side of said river and on both sides of said creek or branch; and that up until the last few years the said bottom land was in a high state of cultivation and was extremely fertile bottom land for the production of corn and other crops, had level surface and rich soil, and was free from deposit of silt and sand. . . .

"That during the past few years the defendant, on account of the unusual and abnormal dry summers, has failed and refused to operate the said dam properly in that the defendant has not opened the gates of the said dam and has not drawn therefrom the water, silt, and sand as frequently as formerly and as necessary, but has allowed the gates to be closed for months at a time in order to preserve water power.

"That solely by reason of the construction of said dam and the addition thereto in height as aforesaid mentioned and the negligent and careless operation of said dam in not having the pond properly and frequently 'drawned,' which said operation has continued until present time, the bed of the said river and branch has filled with dead sand and silt and other debris, and has caused the bed to rise several feet higher than originally, and as a result thereof the said river and branch have practically no banks whatever, and that whenever any little rain or freshet occurs the river and branch spread its water, silt, and sand all over the bottom land of the plaintiffs; and further, that the said lands during the past two and three years have been visited and covered and filled with water and sand to such an extent that the said lands are now entirely useless and worthless for cultivation, and that by reason of the accumulation of sand several feet thereon said lands are also unfit for pasture, or any purpose. . . .

"That the aforesaid acts of negligence and wrongful conduct on part of defendant have gradually increased the damages to said bottom land so that for the past two years or more the plaintiffs' bottom lands have not been fit to cultivate, or even use for pasture; that prior to commencement of injury to plaintiffs' lands 40 to 50 bushels of corn could be easily and profitably produced; that plaintiffs have not only lost use and yields from bottom lands during the past few years, but that said lands are permanently unfit for either cultivation or pasture, and that since the bed of said river and stream is gradually rising and thus increasing the deposit of water, sand, and silt, the damages to plaintiffs' farm and bottom land are becoming more and worse and greater each year, and have been getting worse each year for past few years."

The defendant denied the material allegations of the complaint, and as a further defense says: "That the dam referred to in plaintiffs' complaint was constructed more than thirty-five (35) years ago, and has been operated since that time by the defendant corporation. That the

operation of said dam has been proper, and the same has been operated in such a manner as not to cause any damage to the plaintiffs' property or any other property. That if any damage has been occasioned by the construction and operation of said dam, that the said damage accrued many years ago; and this defendant pleads the twenty-year statute, the ten-year statute, the seven-year statute, and the three-year statute of limitations as a complete bar of plaintiffs' right to recover in this action."

The issues submitted to the jury and their answers thereto were as follows:

"1. Are the plaintiffs the owners of the land described in the complaint, as alleged? Ans.: 'Yes.' (By consent.)

"2. Has the defendant, in the operation and control of its dam, wrongfully flooded the lands of the plaintiffs, as alleged in the complaint? Ans.: 'Yes.'

"3. Is the plaintiffs' cause of action barred by the statute of limitations, as alleged in the answer? Ans.: 'No.'

"4. What damage, if any, are plaintiffs entitled to recover? Ans.: 'One thousand dollars ($1,000).' "

The court below rendered judgment on the verdict. The defendant excepted and assigned error to the judgment as signed, and also made numerous other exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.

*Wade B. Matheny for plaintiff.*
*Stover P. Dunagan, Robt. G. McRorie, and Clyde R. Hoey for defendant.*

CLARKSON, J. The *first* question: Should plaintiffs be nonsuited? We think not.

At the close of plaintiffs' evidence and at the close of all the evidence the defendant in the court below made motions for judgment as of nonsuit. C. S., 567. The court below overruled these motions, and in this we can see no error.

Upon a motion as of nonsuit all the evidence which makes for plaintiff's claim or tends to support his cause of action is to be considered in its most favorable light for plaintiff, and he is entitled to every reasonable intendment thereon and every reasonable inference therefrom.

The competent evidence on the part of plaintiffs sustained the allegations of the complaint, that about 20 acres of plaintiffs' land was damaged by the negligent construction and operation of defendant's power dam—about one mile and a quarter below plaintiffs' land. The defend-

ant, having pleaded certain statutes of limitations, the court below limited the question of wrong to three years. The suit having been commenced on 15 December, 1934, the wrong was limited to three years from 15 December, 1931. We think from the facts and circumstances of this case that the court below was correct.

The defendant's evidence was contrary to that of plaintiffs, but under the rule in this jurisdiction we can only consider plaintiffs' evidence.

About 1895 the defendant built a dam across Second French Broad River, at Caroleen. In 1918, the plaintiffs purchased 57.48 acres of land about one and one-fourth miles above the defendant's dam, paying therefor $50.00 an acre. Plaintiff J. W. Teseneer testified in part: "When I moved there in 1918 the banks on the river were about 6 feet deep, and now the banks around the bottom land are something like two feet deep, or a little more. The bottom land is in two tracts, and is about a quarter of a mile from the lower tract to the upper tract. When the dam is full the pond water would stand on the bottom land. . . . The river did not throw out any sand to do any damage up to about six years ago. . . . I did not plant anything on the bottom land this year, as I made nothing last year. At the present time the land is wet, the part that does not have dead sand on it. About four or five feet of dead sand on it now. It is all level land. Some of it in places is deeper than others. It is so deep that it would not make anything. I am satisfied the average depth on the lower bottom is two feet and six feet on upper bottom." . . .

For seven consecutive years after plaintiff purchased the tract of land in controversy he raised 40 to 50 bushels of corn to the acre. He testified further: "The land is not fit for cultivation now. I never planted anything this year. I let the cows run over it for pasture. Planted about two acres in wire grass about four years ago, but it won't grow. Neither corn nor any other kind of crop will grow in the sand now."

There was other evidence on the part of plaintiffs corroborating his testimony. The plaintiffs' expert witness, H. H. Stribling, an engineer and surveyer, testified, in part: "Assuming 100 to be the height of the flash board on the dam (in order to keep all other measures applicable to 100), the back water with no spilling extends to Teseneer's lower tract, which is absolute dead water—no spilling at one and quarter miles. There is a fall of about two feet from the upper to the lower tract. . . . I examined the surface of the bottom land in question. It is irregular, cut up with sluices; varies in height from one to six feet. At the peak it is ten feet above the spillway, that is all sand. . . . *The bank is practically as high as ever, but it is sand and not soil. I would say the sand is 4 feet deep, most of the way, caused by water and flood—*

*stilling the flood water—stilling of the flood water due to the level of the flash board on the dam.* The level from that point and each succeeding point is still in comparison with the middle of the stream, and it is held there long enough to deposit sand. In a country which is not all cleared it would take quite a long time after the completion of the dam for the sand to be backed up. I have known sometimes it takes ten to fifteen years for a dam to back water on owner's field. The sand is in suspension, carried like a vehicle, and has got to be dropped. Whenever it is still it will be dropped, if it can't run off. It does that in case of a pond and the river itself as far up as the back water—as the flash board affects the gradient—back water on top of that—it is still beyond what nature intended. Nature would carry it to a flat place, where it would be deposited. *If the dam had never been up there and the water got out over the bottom land, the water would run off, carrying this suspended sand, as fast as nature allows."*

J. A. Peeler, a witness for plaintiffs, testified, in part: "I could not say when most of the sand was put there. It has been getting on there for several years. *I would say some five or six years ago before any real damage.* There is a portion of it covered with sand. The land I worked I stuck a stick in it, and said is deep, that was just before last court. It would be hard to tell what the average depth of the sand is unless a man measured it. *I would say anywhere from two to two and a half feet. Some places as deep as a man's hip.* Q. Do you know what put that sand there? Ans.: Caused from slow water of Caroleen dam, I would say. . . . I am a farmer. I would not want to plant a crop on it for myself."

B. A. Stalnaker, a witness for plaintiffs, testified, in part: "I went to Caroleen to work in 1917, as chief engineer and electrician. *There were no flash boards on the dam when I went there 1 February, 1917. I put them on, I think, about April, 1917, with the superintendent's permission, in order to make the water last longer.* The height of the boards did not run even, but were between two and three feet. . . . At that time there were four flood gates in operation, and one over near the west bank that had been out of commission a long time and was not operated. *The flood gates are three feet by five, and the purpose is to draw open the pond and keep it clean.* I worked there eight years. . . . I drew the pond pretty often, usually after I got the gates fixed. I drew it every other Saturday in order to clean the pond and get out mud that would bank up around there, and to make it hold more water. There was plenty of sand there when I first drew the pond. Right in the channel there was about 20 feet of mud in some places. I cut out about 20 feet. The pond got more shallow as it went to the land. . . . In the summer time I usually opened the flood gates every two weeks,

every other Saturday. We had an ice plant and did not want to cripple it every week, just every other week."

We think the evidence, direct and circumstantial, as to the damage for the three years, from 15 December, 1931, sufficient to be submitted to the jury.

The court below charged the jury, to which there was no exception, as follows: "The plaintiffs are not asking for any permanent damage created to that property prior to three years before 15 December, 1931. This action was brought and the date of the summons issued is 15 December, 1934. Three years prior from that date, by mathematical calculation, is 15 December, 1931. The statute of limitation would bar the plaintiffs' right of action if you shall find that the wrongful maintenance of the dam, which caused the damage, was done prior to 15 December, 1931. If you shall find that the wrongful maintenance and operation of the dam caused the damage to plaintiffs' land, you will answer this issue 'Yes.' But the court charges you, that if that wrongful act was done prior to 15 December, 1931, which caused or has produced all of the damage and injury to the plaintiff, then his cause of action is barred by the statute of limitation."

This matter has been so recently considered in *Lightner v. Raleigh,* 206 N. C., 496, that we do not think it necessary again to consider the aspect on the question of the statute of limitations in cases as to damages resulting from acts continuing, recurring, or intermittent. N. C. Code, 1935 (Michie), sec. 441 (3). The defendant's evidence was in sharp conflict to that of plaintiffs, but the matter was for the jury to determine.

The defendant in its *second* question asks: "Did the lower court err in permitting plaintiffs to offer evidence relating to damages sustained to plaintiffs' property and the value of the same prior to 15 December, 1931?" We think not, from the facts and circumstances of this case.

In *Myers v. Charlotte,* 146 N. C., 245 (248), it is said: "The value of land is largely a matter of opinion, derived from a variety of circumstances, and, when it is agricultural land, one of the most important is the yield of crops therefrom. That is a matter upon which farmers acquainted with the land, or who have examined it, can express an opinion more or less accurately. This opinion is subject to the test of cross-examination, and the weight to be given it is a matter for the jury. This matter has been recently fully discussed. *Creighton v. Water Commissioners;* 143 N. C., 171; *Brown v. Power Co.,* 140 N. C., 341." *Powell v. R. R.,* 178 N. C., 243 (248).

In *Rouse v. Kinston,* 188 N. C., 1 (13), we find: "The evidence bearing on the question of compensation naturally takes a wide range—the surrounding circumstances and facts. From the record both sides were allowed latitude."

The court below allowed defendant latitude—Coffey Hollifield, witness for defendant, testified, in part: "I have been on this bottom various times during the past twenty-five years. I don't think this land has been damaged in the last eight or ten years. In my opinion, the island was worth $50.00 an acre eight or ten years ago. In my opinion, the value now is $50.00 an acre. . . . I am somewhat familiar with the other streams, have had experience farming on Puzzle Creek. There is no dam on that stream. Puzzle Creek has been filling up with sand. It has three or four feet now where formerly didn't have any. I know the conditions of other streams about filling up. In my estimation there is not a stream in Rutherford County but what has filled up in the last few years." There was other evidence to like effect on the part of defendant.

The defendant cites 27 R. C. L., p. 1103, which is as follows: "The rule is well settled that the owner of a dam must use reasonable care and skill in so constructing and maintaining it that it will not be the means of injuring another, either above or below, by throwing the water back, or being incapable of resisting it in times of usual, ordinary, and expected floods, but his liability extends no further, and he is not held responsible for inevitable accidents, or for injuries occasioned by extraordinary freshets, which could not be anticipated or guarded against." We think, under the above principle of the law, there was sufficient evidence in this case to be submitted to a jury.

The *third* question: "Did the lower court err in permitting plaintiffs' witnesses to testify as to the cause of damage alleged to have been sustained to plaintiffs' property?" If error, it was waived.

Plaintiff testified, in part: "Q. Mr. Teseneer, what caused that water to be ponded up on your bottom land? Ans.: That dam was the cause of the water being backed up on the bottom. There is no other dam or construction between the Caroleen dam and the bottom land. Q. Go ahead and tell the court and jury what it was that put the sand out on the bottom land, if you know. Ans.: The dam was the cause on account of backing the water so the water would not drain out." To the above questions defendant excepted and assigned error. They cannot be sustained.

It is true the general rule is that the opinion of witnesses is not competent evidence, but, as stated in *Britt v. R. R.,* 148 N. C., 37 (41) (quoting 5 Encyc. Ev., 654), there is well recognized exception to the rule, and "It includes the evidence of common observers testifying the results of their observations made at the time in regard to common appearances, facts, and conditions which cannot be reproduced and made palpable to a jury." The testimony did not invade the province of the jury. *Marshall v. Tel. Co.,* 181 N. C., 294; *Hicks v. Love,* 201 N. C., 773; *Morris v. Lambeth,* 203 N. C., 695.

The plaintiffs' expert witness, Stribling, testified, unobjected to, substantially what plaintiff testified to as above set forth. Many of plaintiffs' witnesses testified to the same effect, unobjected to by defendant. For example, E. T. Randall testified: "Caroleen dam has caused the water to be ponded up to the lower tract. The water has thrown sand out of the river and deposited it on that bottom land." Vance Price testified: "The dam causes the water to pond up. There is nothing between the dam and this lower tract to obstruct the river."

In *Shelton v. R. R.,* 193 N. C., 670 (674), it is said: "It is thoroughly established in this State that if incompetent evidence is admitted over objection, but the same evidence has theretofore or thereafter been given in other parts of the examination without objection, the benefit of the exception is ordinarily lost." *Ingle v. Green,* 202 N. C., 116 (121).

The *fourth* question: "Did the lower court properly charge the jury and submit proper issues in the case?" We think so. The issues tendered were not objected to by defendant, nor did defendant submit other issues.

In the case of *Greene v. Bechtel,* 193 N. C., 94 (99), this Court said: "If the defendant did not consider the issues submitted by the court proper or relevant, it was his duty to tender other issues, and, having failed to do so, he cannot now complain."

We have examined the charge of the court below carefully—it contains 20 pages. Taking same as a whole, and not disconnectedly, we think the able and learned judge in the court below charged the law applicable to the facts and gave fairly the contentions of both litigants.

The record discloses that the defendant, by its attorney, made its motion that the court allow and permit the jury to view and visit the said bottom land and the defendant's dam before arriving at a decision. Plaintiffs' attorney did not object to the motion, but consented thereto. Thus, it was agreed by plaintiffs and defendant that at the conclusion of the judge's charge to the jury, that the jury should go out and view the location of the Teseneer land and the Caroleen dam. This was done by the jury before they rendered their verdict.

The *fifth* question is not material and has already been considered under other questions. We see no prejudicial or reversible error in the exceptions and assignments of error made by defendant.

The *sixth* question: "Is the judgment in proper form to settle the controversy between the parties?" We think not. The judgment must be modified.

The case was tried on the theory of permanent damage and the court below charged, unobjected to: "Now, the court charges you that if you find that this defendant has committed a wrongful act in that it has failed to exercise due care in the maintenance and operation of its dam,

and that such failure is the proximate cause of flooding plaintiffs' land, and that that failure took place on 15 December, 1931, or any time since then, the plaintiffs would be entitled to recover the difference between the reasonable market value at the time of the injury—time the injury took place—and the reasonable market value at this time. Q. (By juror) : Are we to consider permanent damage, if any we find, after this date? The court: Of course, gentlemen, this is a permanent damage, but you have got to measure it by something, and the measurement is the difference between the reasonable market value at this time and the market value on 15 December, 1931. Or, put it another way : The difference between the reasonable market value of the land if the water was not on it 15 December, 1931. You ascertain what that value was at that time, and then the difference between the value of it at that time and the value of it at this time. That is the damage, and that measure of damage will include all damages." The judgment must be modified so as to give and grant the defendant, its successors and assigns, an easement to back water on the 20 acres of plaintiffs' land damaged by defendant, as found by the jury.

For the reasons given, the judgment is modified. There is no error in the trial.

No error.