### C. J. SPEARS AND LEONARD E. SPEARS v. PEYTON RANDOLPH.

(Filed 23 March, 1955.)

**1. Boundaries § 5e—**

   Where the complaint refers to a map on file in the office of the clerk of the Superior Court of a county in a prior proceeding, and the map is introduced in evidence from the plat book of the clerk's office, with identification that it was the same map referred to in the complaint, and the map purports to be over 30 years old, it is competent in evidence under the Ancient Documents Rule, and may be used as a basis of testimony by the witness, proper custody of the map having been shown.

**2. Appeal and Error § 23—**

   An assignment of error should present a single question of law for consideration by an appellate court.

**3. Boundaries § 5c—**

   Common reputation, to be admissible, should have its origin at a time comparatively remote, always *ante litem motam,* and should attach itself to some monument of boundary or natural object, or be fortified by evidence of occupation and acquiescence tending to give the land some fixed and definite location. Testimony in this case *held* substantially in accord with the rule, or at any rate, its admission was not prejudicial since testimony of like import was thereafter admitted without objection.

**4. Appeal and Error § 39e—**

   Exceptions to testimony cannot be sustained when it appears that testimony of like import was thereafter admitted without objection.

**5. Boundaries § 5c—**

   The witness' testimony in this case as to the boundaries *held* based on general reputation, and not what a particular person told the witness as to the boundaries.

**6. Boundaries § 5d—**

The mere fact that a deceased declarant owns an adjoining tract of land does not make him interested and render his declaration as to boundaries incompetent, but the adverse party must make his interest appear in order for an exception to the testimony to be sustained.

**7. Boundaries § 5c—**

Testimony as to a boundary line based upon general reputation is not rendered incompetent because the witness, who had testified that he knew the general reputation, also testified that a predecessor in title, while owning the land, had told the witness the location of the line.

**8. Appeal and Error § 38—**

The burden is on appellants not only to show error, but to show prejudicial error amounting to the denial of some substantial right.

BARNHILL, C. J., and DEVIN, J., took no part in the consideration or decision of this case.

APPEAL by petitioners from *Hubbard, Special Judge,* November Special Term 1954 of HALIFAX.

Processioning proceeding to determine the true boundary line between the lands of the petitioners and respondent.

This proceeding was brought before the Clerk of the Superior Court, and upon denial of petitioners' title it was transferred to the Superior Court for trial. At the trial in the Superior Court the parties stipulated that neither denied the title of the other to the lands described in the petition and answer.

One issue was submitted to the jury: "What is the true dividing line between the lands of the plaintiffs and the lands of the defendant?" The jury answered the issue, "CD," which was the line as contended for by the defendant.

From judgment on the verdict, the petitioners appealed, assigning error.

*George C. Green and Buxton Midyette for Plaintiffs, Appellants.*
*Johnson & Branch and Allsbrook & Benton for Defendant, Appellee.*

PARKER, J. The plaintiffs discuss their assignments of error under three heads in their brief. In all of these they contend that the Trial Court erred in the admission of evidence.

Under their first head in their brief plaintiffs group, and assign as error their Exceptions 1, 2, 3, 4, 22, 23, 24 and 25, contending that the court erred in admitting in evidence a map of the Jennie B. Hunter Estate, and testimony based on the map, all over their objections, and assign three reasons for their contention: First, the map was not identi-

fied as being part of the records in the Office of the Clerk of the Superior Court of Halifax County. Second, the map is not self-proving and the defendant failed to offer evidence that it was made at the instance of the owner of the land at the time it purports to have been made, or that it has been accepted or recognized by the owner. Third, the defendant failed to offer evidence that the map was a true representation of plaintiffs' land.

The plaintiffs offered in evidence the description of their land from their Complaint, which reads in part as follows: "It being a part of Tract No. 6 allotted to the late Dr. Norman C. Hunter in that Special Proceeding entitled 'In the Matter of Thomas B. Hunter, Walker F. Hunter, Dr. Norman C. Hunter, Misses Bessie and Janie R. Hunter, *Ex Parte,*' said proceeding recorded in Special Proceeding Book 9, at page 149, in the office of the Clerk of the Superior Court for Halifax County; said tract or parcel of land later devised to Carrie J. Hunter by the Will of her husband, the late Dr. Norman C. Hunter, said Will on record in Will Book 13, at page 162, in the office of the Clerk of the Superior Court for Halifax County."

This description from the Complaint contains this further language: "The calls in the line running with the meanders of Fishing Creek, the calls in the line running from Fishing Creek to the corner of Thomas Whitaker property and the calls in the line running from the Thomas Whitaker property to the Atlantic Coast Line Railroad were taken from a map prepared by A. M. Atkinson during November 1914, said map to be found filed with the papers of that Special Proceeding entitled 'In the Matter of Thomas B. Hunter, Walker F. Hunter, Dr. Norman C. Hunter, Misses Bessie and Janie R. Hunter, *Ex Parte,*' in the office of the Clerk of the Superior Court for Halifax County."

The map introduced in evidence by the defendant to which plaintiffs objected, is thus described in the Record: "DEFENDANT OFFERS in evidence Plat Book 2, page 22 of the Clerk of the Superior Court of Halifax County, Map of Jennie B. Hunter Estate, with a legend thereon reading as follows: 'Halifax County near Enfield, N. C. survey by A. M. Atkinson, November 1914, signed Commissioners B. D. Mann, F. C. Pittman and J. H. Sherrod, Docketed in Special Proceedings Volume 9, page 149. Marked Defendant's EXHIBIT 1."

It would seem that the map introduced in evidence by the defendant is the same map referred to in plaintiffs' Complaint. Defendant's map of Jennie B. Hunter Estate was prepared by A. M. Atkinson in November 1914, and docketed in Special Proceedings Volume 9, page 149. Plaintiffs' Complaint describes their land as "being a part of tract No. 6 allotted to the late Dr. Norman C. Hunter in that Special Proceeding entitled 'In the Matter of Thomas B. Hunter, Walker F. Hunter, Dr. Norman C. Hunter . . . Janie R. Hunter, *Ex Parte,*' said Proceeding

recorded in Special Proceeding Book 9, at page 149 . . ." And further on the Complaint refers to "a map prepared by A. M. Atkinson during November 1914, said map to be found filed with the papers of that Special Proceeding entitled 'In the Matter of Thomas B. Hunter, . . . Janie R. Hunter, *Ex Parte,*' in the office of the Clerk of the Superior Court for Halifax County."

The description in the Complaint of plaintiffs' land is that it is a part of tract No. 6 of the division of the Hunter land, and refers to the Atkinson map filed in the Special Proceeding in the office of the Clerk of the Superior Court in Halifax County. Jake Shearin, a registered engineer and witness for the plaintiffs, testified on cross-examination: "Yes, I also looked at this map of Record in Halifax in making my survey. I consulted this map. Lot No. 6 shown on this map is the same property owned by Mr. Spears." Then Shearin was asked: "Would you read to the jury what that map shows the call to be?" Over the plaintiffs' objection and exception No. 1 the witness was permitted to answer.

Julian Trailer, a registered engineer and witness for the plaintiffs, testified on cross-examination: "Yes, I checked this map on my survey, also ran this complete line out and then made an angle. Yes, there is one turn on that map. There are two turns in my map. Q. And the one you took from the record, isn't there? Objection. Overruled. Plaintiffs' Exception No. 2. A. There is two turns in here."

It appears to us that the evidence clearly shows that the map introduced in evidence by the defendant, over the plaintiffs' objection, was a part of the Records in the Office of the Clerk of the Superior Court of Halifax County.

It also seems from the Records referred to in the pleadings and from the evidence that Janie R. Hunter and Jennie B. Hunter are the same person. In addition, plaintiffs in objecting to the admissibility of the map, make no intimation that they were different persons.

The Atkinson map is referred to in plaintiffs' Complaint, was consulted by their witness Shearin, was checked by their witness Trailer, in their surveying the line contended for by plaintiffs, purports to be over 30 years old, seems to have been made at the instance of Janie R. Hunter and the others in the *Ex Parte* Proceeding, and accepted by her and them while owning the land as a true representation of Janie R. Hunter's land, was relevant to the inquiry, was produced from proper custody, and on its face was free from suspicion. It was admissible in evidence under the Ancient Documents Rule. *Nicholson v. Eureka Lumber Co.,* 156 N.C. 59, 72 S.E. 86, 36 L.R.A. (N.S.) 162; *Thompson v. Buchanan,* 195 N.C. 155, 141 S.E. 580; 20 Am. Jur., Evidence, Secs. 932-934; Stansbury, N. C. Evidence, Sec. 196; 32 C.J.S., Evidence, Sec. 746.

*Gates v. McCormick,* 176 N.C. 640, 97 S.E. 626, relied upon by plaintiffs is distinguishable because proper or natural custody was not shown.

The plaintiffs make no contention in their brief that any of the testimony based on this map was incompetent, except that the introduction of the map was error. There was no error in admitting the map in evidence, and in admitting the testimony based thereon, and Exceptions 1, 2, 3, 4, 22, 23, 24 and 25 are overruled.

Under their second head in their brief plaintiffs group, and assign as errors their Exceptions 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18, contending that the Trial Court erred in admitting evidence as to the general reputation of the beginning of the boundary line and of the boundary line between the lands of plaintiffs and defendant because the evidence did not show, as plaintiffs contend, that such reputation arose *ante litem motam.*

Under their third head in their brief plaintiffs group, and assign as errors their Exceptions 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18, contending that the Trial Court erred "in admitting testimony as to declarations made by a person deceased when he was the owner of defendant's land and testimony based upon such declarations."

It is elementary learning that an assignment of error must present a single question of law for consideration by an appellate court. As to when it is proper to group more than one exception under one assignment, see *Dobias v. White,* 240 N.C. 680, 83 S.E. 2d 785.

Such grouping of exceptions necessitates "a voyage of discovery" to ascertain which of the evidence admitted over objection and exception was of general reputation, and which of declarations, and would seem to approximate a broadside assignment.

This Court said in *Peltz v. Burgess,* 196 N.C. 395, 145 S.E. 781: "We have often held that common reputation, to be admissible, should have its origin at a time comparatively remote, always *ante litem motam,* and should attach itself to some monument of boundary or natural object, or be fortified by evidence of occupation and acquiescence tending to give the land some fixed and definite location."

The summons in this case was issued 16 September 1953, and served upon the defendant the next day. One of the plaintiffs testified, "I have owned this land that is in contention since 1951." There is no evidence in the Record that there was any dispute over the boundary line before 1951.

Plaintiffs' Exceptions 5, 6, 7, 8, 9, 10, 11, 12, 13, 14 and 15 appear in the testimony of the defendant Peyton Randolph, Sidney Randolph and Jack Whitehead. The evidence admitted over objections and these exceptions is substantially this: There has been in the community for some forty years or more a general reputation as to the boundary line between

the land of plaintiffs and defendant—Sidney Randolph testified he was 51 years old and had known the general reputation of the boundary line since he was big enough to walk around—; and that the general reputation is that the beginning of the line was a Hickory Tree that fell into Fishing Creek, and that a wire fence attached to the tree ran along the line.

Afterwards without objection Henry Clay, Calhoun Braswell and Frank Whitehead gave substantially the same testimony as to the general reputation of the beginning of the boundary line and the line.

This general reputation seems to have arisen *ante litem motam*. Even if this evidence were incompetent, exceptions to its admission cannot be sustained, because it appears that testimony of like import was thereafter admitted without objection. *Teseneer v. Mills Co.,* 209 N.C. 615, 184 S.E. 535; *Edwards v. Junior Order,* 220 N.C. 41, 16 S.E. 2d 466; *Belhaven v. Hodges,* 226 N.C. 485, 39 S.E. 2d 366.

During the testimony of Sidney Randolph he said on direct examination he was familiar with the boundary line. Counsel for plaintiffs at that point was permitted to question him and the Record shows this:

"Mr. Randolph, who told you what the dividing line was?

"A. Well, it has been there ever since I can remember. Father and everybody around there knew that was the line.

"He owned it at the time he told you?

"A. Yes.

#### OBJECTION

"THE COURT. I will permit him to say whether he knows the reputation but not what it is."

Afterwards Sidney Randolph gave testimony as to the general reputation. The testimony of Sidney Randolph as to the boundary line was not what his father told him, but its general reputation.

The assignments of error based on exceptions 5 to 15, both inclusive, are overruled.

Jack Whitehead, a witness for defendant testified that he knew the general reputation as to the beginning point of the dividing line between the lands of plaintiffs and defendant, and had known it since he was 6 years old. He then testified as to the general reputation of the line. Whitehead was then asked by counsel for plaintiff, who was permitted to interrupt the direct examination: "Who told you where that line was? A. Mr. Paul Randolph and Mr. Walker Hunter. Mr. Hunter was interested in the lands? A. Yes." Motion to strike witness' testimony. Overruled. Plaintiffs' Exception 16. "And Mr. Randolph, he owned it too? A. At that time he did, yes." Motion to strike witness' testimony. Overruled. Plaintiffs' Exception 17. On cross-examination this appears in

the Record in narrative form, not in questions and answers: "Mr. Paul Randolph is one who told me what I have testified to about the dividing line, the fence being the dividing line. I have had Mr. William Randolph tell me the same thing. I think Paul Randolph was the owner of the land at the time he made the statement. MOTION TO STRIKE witness' testimony—OVERRULED—plaintiffs' EXCEPTION 18."

There is no evidence in the Record that William Randolph had ever had any interest in defendant's land. It would seem that Walker Hunter owned adjoining land, but that Walker Hunter had never had any interest in the defendant's land.

The mere fact that a deceased declarant as to boundaries owns an adjoining tract of land does not necessarily make him interested, and render his declaration incompetent. *Bethea v. Byrd,* 93 N.C. 141; *Lewis v. Lumber Co.,* 113 N.C. 55, 18 S.E. 52; *Sullivan v. Blount,* 165 N.C. 7, 80 S.E. 892. Declaration of a deceased owner of adjoining land as to where his corner was is incompetent, because he is interested. *Chrisco v. Yow,* 153 N.C. 434, 69 S.E. 422. Walker Hunter told Whitehead where the boundary line was between the land owned by plaintiffs and that owned by defendant. No interest of Hunter's is made to appear.

Plaintiffs say in their brief: "Likewise it was error to have allowed the witness Jack Whitehead to testify, 'Mr. Paul Randolph is one who told me what I have testified to about the dividing line, the fence being the dividing line' (Plaintiffs' Exception 18 (R p 25) when Paul Randolph was the owner of the defendant's land at the time he made the statement and therefore the other testimony given by Mr. Whitehead covered by plaintiffs' exceptions numbers 12, 13, 14, 15, 16 and 17 (R pp 23, 24) was inadmissible."

What Paul Randolph told Jack Whitehead was brought out by plaintiffs' counsel. The source of Jack Whitehead's knowledge of the general reputation of the boundary line was not derived solely from Paul Randolph. Even conceding that what Paul Randolph told him was incompetent as a source of information as to general reputation, Jack Whitehead's testimony as to the general reputation should not have been stricken out, because of testimony of like import later, without objection, by Henry Clay, Calhoun Braswell and Frank Whitehead. Exceptions 16, 17 and 18 are overruled.

The burden is on the appellants not only to show error, but to show prejudicial error amounting to the denial of some substantial right. *Billings v. Renegar,* 241 N.C. 17, 84 S.E. 2d 268. This they have not done.

No error.

BARNHILL, C. J., and DEVIN, J., took no part in the consideration or decision of this case.