STATE v. TED JACOBS

No. 28

(Filed 14 October 1970)

1. **Arrest and Bail § 3— arrest without warrant — rape suspect — probable cause**

   Police officers had probable cause to arrest defendant without a warrant on a charge of rape, where (1) the prosecuting witness had furnished to the officers the numbers 15339 and 13559 as being the possible city tag numbers on the car driven by her assailant, (2) by tracing the number 13559 the officers were led to the address where defendant was found, (3) defendant admitted to officers that he owned the car and the city tag, (4) defendant admitted that he kissed and felt of the prosecuting witness, and (5) the very nature of the crime was sufficient to support a reasonable belief that defendant would evade arrest if not immediately taken into custody. G.S. 15-41(2).

2. **Arrest and Bail § 3— arrest without warrant**

   An arrest without a warrant, except as authorized by statute, is illegal.

3. **Arrest and Bail § 3— detention of defendant — reasonable grounds — description of person or car**

   A description of either a person or an automobile may furnish reasonable grounds for arresting and detaining a criminal suspect.

4. **Criminal Law § 76— admission of incriminating statements — in-custody interrogation**

   Where there was ample evidence that the police officers had probable cause to arrest defendant without a warrant on a charge of rape, and that the officers advised defendant of his constitutional rights under *Miranda v. Arizona,* the trial court properly found that the defendant's in-custody statements to the arresting officers were voluntarily made.

5. **Criminal Law § 66— photographic identification of defendant**

   In a rape prosecution, the trial court properly found that the victim's identification of defendant, an Indian, from a group of photographs of white males supplied by the police "was made without intimidation, suggestion or coercion on the part of anyone, and was made independent of and free from outside influences"; consequently, it was unnecessary for the court to make an additional factual determination whether the victim's in-court identification of defendant was of independent origin of the photographic identification.

6. **Criminal Law § 66; Constitutional Law § 32— right to counsel — photographic identification of defendant**

   Defendant did not have a constitutional right to counsel during the out-of-court identification of defendant from police photographs.

7. **Criminal Law § 115— instructions on lesser included offense**

   Absent evidence which will support a verdict, the trial judge is not required to charge on the lesser included crime.

8. **Criminal Law § 169— admission of testimony over objection — harmless error**

   The admission of testimony over objection is harmless when the facts sought to be established are admitted by the defendant.

APPEAL by defendant from *Seay, J.,* 16 March 1970 Mixed Session of DAVIDSON Superior Court.

This is a criminal prosecution on an indictment charging defendant with the capital crime of rape. Defendant entered a plea of not guilty. The jury returned a verdict of guilty and recommended that the punishment be imprisonment for life. Sentence was imposed accordingly, and defendant appealed to this Court.

The State offered the evidence of Miss Christina Block, which tended to show that on Sunday night, 28 September, 1969, she was en route from Chapel Hill to Charlotte on Interstate Highway 85. She stopped in High Point at about 10:30 to get a soft drink. When she returned to the highway an automobile pulled up behind her and its lights blinked on and off until Miss Block reached a well-lighted portion of the highway and stopped. The car behind her stopped, and a man came over and told her something was wrong with her rear tire and offered to fix it for her. She thereupon opened the trunk of her car to get the tools and stood near the vicinity of the open trunk for about twenty minutes while the man worked on the tire. During this time the light in the trunk furnished sufficient illumination for her to see his face. The man put the tools back into the car and then said that he had dropped a tool on the ground, and when Miss Block walked over to look for it, he pushed her off a steep embankment and there forcibly, against her will, had sexual intercourse with her. When he stood back from her, she ran up the hill, entered her car and drove to a service station located about one-half mile down the road. She there asked the people in the service station to call the police. She was in defendant's presence at the scene for about one and one-half hours. Miss Block identified the defendant as the man who raped her and upon defendant's objection to the in-court identification, the jury was excused and a *voir dire* hearing was held on the question of the in-court identification. At the close of the *voir*

State v. Jacobs

*dire* hearing, the trial judge overruled defendant's objection and the in-court identification was admitted. The prosecuting witness also testified that the car operated by the defendant was dark, either black or blue, with a High Point city tag on the front. She told the people at the service station the license number on the city tag and later gave numbers to the Sheriff's Department. She described the man who attacked her to the police as being very tall, having a hollow looking face and hair which was long on top and short around the back. She testified that her assailant had a strange voice and talked very slowly. She also described his clothing.

Clifton Freedle testified, in substance, that he was in the service station between 11:00 and 11:30 o'clock on September 28 when the prosecuting witness came into the station and said that she had been raped. He said she was crying and "very upset." He picked briars out of her fingers and ankles.

Dr. Crawford W. Lewis testified that he examined Miss Christina Block at about one o'clock A.M. on September 29 and determined that there was male sperm in her vagina.

Mark Stabler, of the High Point Sheriff's Department, in part testified that he had two High Point city tag numbers furnished him and he had a check run on the numbers. One of the numbers, 13559, "came back to Mr. Ted Jacobs." After obtaining this information, defendant Ted Jacobs was located at 1201 English Street, High Point, N. C., by Officer Stabler and Detective White of the High Point Police Department. Stabler testified that defendant was advised of his constitutional rights and that they had some conversation with defendant. At this point defendant's counsel objected and a *voir dire* hearing was held, and at the conclusion of the *voir dire* statements made by defendant were admitted into evidence. (The admission of defendant's alleged statements and the testimony concerning identification of defendant by the prosecuting witness will be more fully considered in the opinion.)

The State offered other testimony which tended to corroborate the witness Christina Block.

Defendant offered no evidence.

*Attorney General Morgan and Staff Attorney Denson for the State.*

*Fred M. Upchurch for Defendant.*

BRANCH, Justice

[1]  Defendant contends that the admission of his alleged confession violated his constitutional rights because it was the product of illegal custodial interrogation. He contends that he was arrested and detained without probable cause.

[2]  An arrest without a warrant, except as authorized by statute, is illegal. *State v. Mobley,* 240 N.C. 476, 83 S.E. 2d 100; *State v. Moore,* 275 N.C. 141, 166 S.E. 2d 53.

G.S. 15-41, in part, provides: "A peace officer may without a warrant arrest a person . . . . (2) When the officer has reasonable ground to believe that the person to be arrested has committed a felony and will evade arrest if not immediately taken into custody."

[3]  It is well recognized that a description of either a person or an automobile may furnish reasonable ground for arresting and detaining a criminal suspect. Holmgren, What are Reasonable Grounds for an Arrest, 42 Chi-Kent L. Rev. 101 (1965).

This Court has held that reasonable grounds existed in a case where the arresting officer had information that a robbery had been committed by a person who fled and the officer was furnished a description of the assailant and the clothing which he wore. The officer was also advised that the assailant had a cut on his leg and that he could probably be found at a certain address. Upon arriving at the given address, he found defendant, whose appearance coincided with the description furnished, and arrest was made without warrant. *State v. Grier,* 268 N.C. 296, 150 S.E. 2d 443.

In the case of *State v. Pearson* and *State v. Belk,* 269 N.C. 725, 153 S.E. 2d 494, the victim of a robbery gave officers a description of the men who robbed him and the vehicle in which they were riding. On the same night men fitting the description given the officers and riding in a vehicle similar to the one described to the officers were apprehended and arrested by the officers. This Court held that the officers had ample evidence of probable cause to authorize the making of the arrest. See also

---

State v. Jacobs

---

*State v. Tippett,* 270 N.C. 588, 155 S.E. 2d 269; *State v. Bell,* 270 N.C. 25, 153 S.E. 2d 741; *State v. Hamilton,* 264 N.C. 277, 141 S.E. 2d 506, *cert.* den. 384 U.S. 1020, 16 L. ed. 2d 1044, 86 S. Ct. 1936; *McCray v. Illinois,* 386 U.S. 300, 18 L. ed. 2d 62, 87 S. Ct. 1056, for other cases which hold arrests without warrant are proper because the officers had reasonable ground to believe that the person arrested had committed a felony.

[1]   In instant case police officers had been furnished a description of defendant. The prosecuting witness had furnished them two numbers of a High Point city tag as being the possible numbers on the car driven by the man who raped her. The numbers were 15339 and 13559. By tracing the number 13559, the officers were led to the address where defendant was found. Upon objection by defendant's counsel to the offering in evidence of statements made by defendant at the place where he was found, the trial judge, in accord with our decisions, excused the jury and conducted a *voir dire* hearing to determine the admissibility of defendant's statements or confession.

On *voir dire,* Officer Stabler testified that when they located defendant he was warned of his constitutional rights by Detective White, who advised defendant that he had a right to remain silent, and that anything he said could be used against him in court; that he had a right to talk to a lawyer for advice before we asked him any questions, and that he had a right to have a lawyer with him during questioning; he also advised him that if he could not afford a lawyer, one would be appointed for him before any questioning if he wished; he was also advised that if he decided to answer questions at that time, he still had a right to stop answering any time until he talked to a lawyer. He was asked if he understood these rights, and he said that he did and he would be glad to talk to the officers.

The officers observed a 1965 dark blue Buick bearing High Point city tag No. 13559 on its front, sitting by the house in which defendant was located. They then asked defendant if he owned the car and if tags on the front were his. Defendant replied in the affirmative to both questions. Defendant was then asked if he would mind going to the Sheriff's office in Thomasville to talk to the officers. He said he would go. In Thomasville, Officer Stabler again warned defendant of his constitutional rights, and defendant said that he understood his rights. Officer Stabler further testified:

"He told us he was the owner of (here objection overruled) a blue 1965 Buick; told us that he worked at Clarendon Industries, English Road, High Point, and that he worked part time at Triad service station on English Street. He stated that last night—this was previous night on September 28—that he had gotten off work approximately 8:15 p. m. and that sometime after 10:00 p. m. he wasn't sure what time, he stopped a woman in a small foreign car. He thought the car was burgundy in color. He said he noticed one of the back wheels and was sure that it was the right one that was wobbling. He said, 'I stopped the car by flashing the lights on my car. I saw a Volkswagen flash their lights too, I told the blond-headed lady about it and told her I would fix it. I used her tools. I had to take the tire loose in the trunk but didn't take it out of the car.'

" 'She was wearing pants, I think, and we went down the bank. She took her pants loose. She had her belt in her hand, and she put her car keys on her belt. Then I took my pants loose and took it out. I think she changed her mind.'

"I asked him at that point, 'Did you feel of her?' He said 'yes.' I asked him, 'Did you kiss her?' He said 'Yes.' He further stated that he did not have intercourse or sexual intercourse with the woman. He did say that they had tussled and rolled on the ground at the bottom of the bank. He said he was on top of her and that he tried to have relations with her but didn't.

"That was the extent of his statement. We placed him under arrest and charged him with rape. Those are the only two statements we took from him."

At the conclusion of the *voir dire*, the court found that both statements made by defendant were "made freely, understandingly, intelligently, and voluntarily after having been warned of his constitutional rights and having been given the Miranda warning." The court thereupon overruled defendant's objection and Officer Stabler testified before the jury as to the statements made by defendant.

The court's findings that the statements made by defendant were voluntary is supported by ample competent evidence, and this Court is bound by the findings of the trial judge. *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1, *cert.* den. 386 U.S. 911, 17 L. ed.

State v. Jacobs

2d 784, 87 S. Ct. 860; *State v. Wright,* 274 N.C. 84, 161 S.E. 2d 581, *cert.* den. 396 U.S. 934, 24 L. ed. 2d 232, 90 S. Ct. 275.

The facts and circumstances surrounding defendant's arrest furnished plenary evidence to support a reasonable belief on the part of the officers that defendant had committed a felony. The very nature of the crime suffices to support a reasonable belief that defendant would evade arrest if not immediately taken into custody.

Defendant relies heavily upon *Davis v. Mississippi,* 394 U.S. 721, 22 L. ed. 2d 676, 89 S. Ct. 1394, and *Morales v. New York,* 396 U.S. 102, 24 L. ed. 2d 299, 90 S. Ct. 291, for support of this assignment of error. In *Davis v. Mississippi,* an aged lady was raped by an assailant who could only be described as a Negro youth. The police procured hand and fingerprints left on a windowsill of the victim's house. Defendant, along with some twenty-four other Negro youths, was fingerprinted at a time when the police had no reasonable cause to believe he was guilty. Fingerprints on the windowsill were later found to be defendant's fingerprints. At defendant's trial, the fingerprints were introduced into evidence over objection. The United States Supreme Court held the fingerprints were erroneously admitted.

In *Morales v. New York, supra,* defendant was arrested without a warrant, and while he was in custody made a confession. The confession was found to be voluntary by the trial court and was admitted into evidence. His conviction was affirmed by the appellate division. On appeal to the New York Court of Appeals, defendant, for the first time, contended that his confession was an inadmissible fruit of illegal detention. On *certiorari,* the U. S. Supreme Court vacated the judgment and remanded the case for further proceedings to determine whether the confession was inadmissible as being fruit of an illegal detention. In remanding, the Court said that by developing the evidence the State might show "that there was probable cause for an arrest or that Morales' confrontation with the police was voluntarily undertaken by him or that the confessions were not the product of illegal detention."

Instant case is easily distinguished from *Davis* and *Morales* for several causes, the most apparent and compelling distinction being that in the cases relied upon by defendant there is total failure by the prosecution to show probable cause for the arrest.

In the case before us there is ample evidence of probable cause for arrest.

[4]   We hold that defendant's statements were properly admitted into evidence.

[5]   Defendant asserts that his constitutional rights were violated by the admission of in-court identification testimony because prior photographic identification procedures were constitutionally impermissible.

After the prosecuting witness testified that she recognized defendant as her assailant, defendant's counsel objected to the in-court identification. The trial judge thereupon excused the jury and heard the testimony of the prosecuting witness and Officer Mark Stabler. The record does not show that defendant offered evidence on the *voir dire.*

The prosecuting witness testified that after September 28th she had seen defendant three times, including the present trial. The other two times were when preliminary hearings were scheduled. She identified defendant as the man who had raped her. She further testified that on the morning of the 30th of November she, her parents, Officer Stabler and another police officer were present at the Sheriff's Department in Thomasville and at that time Officer Stabler gave her twelve photographs to examine. She looked at them, one at the time, and identified two of the photographs as being photographs of the defendant. She did not remember the race or hair color of the other ten. She did not know at that time that defendant was a member of the Indian race. She had excluded consideration of the Negro race by telling the officers that her assailant was a white person. She saw defendant at the scene for about an hour and a half, and when he was working on her automobile tire a light from her trunk was on his face for about fifteen or twenty minutes. She testified:

"I did not see the defendant at all from the time I saw him at the scene until I identified him at the preliminary hearing. I never attended any 'lineup.' When I identified the defendant here today in court, it was the result of having seen him at the scene and not any kind of prompting."

She did not see any information on the back of the pictures.

Officer Mark Stabler testified that he exhibited the twelve photographs to the prosecuting witness on 30 September. The

photographs of the defendant were color photographs, made on the night of 29 September 1969. He stated that in selecting the pictures from the files of the Davidson County Sheriff's Department he tried to find a dark headed man with a hollow cheeked face. The pictures had dates showing when they were made on the front, and some of them showed age and height. The warrant was prepared and served on defendant on 30 September 1969, after the pictures were exhibited. At the conclusion of the *voir dire* hearing, the trial judge made and entered the following finding:

> COURT: The jury having been removed from the courtroom upon objection of counsel for the defendant of the in-court identification of the defendant, the defendant thereupon being afforded the opportunity to present evidence in the case; the prosecuting witness, Miss Christina Block, having testified that she identified a photograph of the defendant on September 30, 1969, in Thomasville on or about 11:15 a.m.; that she made identification from a group of twelve photographs; that she identified two of the photographs as being the defendant; that she had no recollection concerning the details and characteristics of the other ten photographs; that at the time identification was made nothing was said to her concerning the identities of any of the parties; that the photograph of the defendant had been taken on September 29, 1969 in Lexington, N. C. by deputy Sheriff Stabler; that of the twelve photographs the Deputy Sheriff Stabler testified that ten of the photographs were black and white; that two were in color; that two of the photographs were of the defendant; that the remaining ten were of other individuals.
>
> The Court finds as a fact that the identification of the defendant from the group of photographs presented to Miss Block by Miss Block was made without intimidation, suggestion, or coercion on the part of anyone; that her identification was made independent of and free from outside influences and the objection of the defendant to the in-court identification of the defendant is overruled."

The questions presented by this assignment of error have been exhaustively considered by the Court in the case of *State v. Accor and Moore,* 277 N.C. 65, 175 S.E. 2d 583, where Bobbitt, Chief Justice, speaking for the Court, stated:

"(D)efendants contend, based on *United States v. Wade,* 388 U.S. 218, 19 L. ed. 2d 1149, 87 S. Ct. 1926, and *Gilbert v. California,* 388 U.S. 263, 18 L. ed. 2d 1178, 87 S. Ct. 1951, that the photographic identifications on March 6th constituted a 'critical stage' in the prosecution and that, because defendants were not then represented by counsel, their Sixth Amendment rights to counsel were violated. . . .

. . . .

"In our view, the doctrine of Wade and Gilbert *should not be extended* to out-of-court examinations of photographs including that of *a suspect,* whether the suspect be at liberty or in custody. We shall adhere to this view unless and until the Supreme Court of the United States enunciates such an extension of the Wade and Gilbert doctrine."

Chief Justice Bobbitt also set forth definite rules which ordinarily govern the procedure to be followed by a trial judge when defendant objects to an in-court identification on the ground that the in-court identification has been tainted by a prior photographic identification. He stated, *inter alia,* that upon objection and request for *voir dire* hearing

". . . (T)he court must determine upon the evidence *then* before it whether 'the photographic identification procedure' was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' *Simmons v. United States, supra.* Whatever the indicated prior determinations may be with reference to the out-of-court photographic identifications, the court must make an additional factual determination as to whether the State has established by clear and convincing proof that the in-court identifications were of independent origin and were untainted by the illegality, if any, underlying the photographic identifications."

[6]   Clearly, the case of *State v. Accor and Moore, supra,* is ample authority to dismiss defendant's contention that he had a constitutional right to counsel at the photographic identification procedures.

The findings by the trial judge that the identification from the group of photographs "was made without intimidation, suggestion or coercion on the part of anyone, and was made independent of and free from outside influences" substantially com-

State v. Jacobs

plies with the requirement that "The court must determine upon the evidence *then* before it whether 'the photographic identification procedure' was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' *Simmons v. United States, supra." State v. Accor and Moore, supra.* Since defendant in instant case was not illegally in custody, and under this assignment of error his sole contention, which we have found to be without merit, is that the in-court identification was tainted by the photographic procedures, it became unnecessary for the court "to make an additional factual determination as to whether the State has established by clear and convincing proof that the in-court identifications were of independent origin and were untainted by the illegality, if any, underlying the photographic identifications." *State v. Accor and Moore, supra."*

Assuming, *arguendo*, that there was error in the finding of facts on the *voir dire* and in overruling defendant's objection to the in-court identification, we think this record shows that no prejudicial error could have resulted. The record reveals that the prosecuting witness had opportunity to observe defendant for a period of about an hour and a half in a lighted area, and that for about fifteen or twenty minutes of that time she observed defendant while her trunk light was on his face. The record reveals no discrepancy between any previous description given by the prosecuting witness and defendant's actual description. Further, only a short time elapsed between the criminal act and the photographic identification, and the prosecuting witness had never identified any other person as her assailant. *United States v. Wade,* 388 U.S. 218, 18 L. ed. 2d 1149, 87 S. Ct. 1926. When defendant's photographs were made, he was in legal custody. Moreover, more compelling than any other single fact is that prior to the photographic identification defendant had made a voluntary statement which unquestionably identified him as the prosecuting witness' assailant.

Thus, had we found error in finding facts, making and entering conclusions of law and ruling on the admissibility of the identification testimony challenged by this assignment, this record discloses that the State has shown beyond a reasonable doubt that such error did not contribute to the verdict obtained. *Chapman v. California,* 386 U.S. 18, 24, 17 L. ed. 2d 705, 710-711, 87 S. Ct. 824, 828. This assignment of error is overruled.

Defendant assigns as error the failure of the trial judge to charge the jury on the lesser included offense of assault on a female.

[7] There is no merit in this assignment of error because the evidence does not warrant a verdict of guilty of simple assault on a female. Absent evidence which will support a verdict, the trial judge is not required to charge on the lesser included crime. *State v. Smith,* 268 N.C. 167, 150 S.E. 2d 194; *State v. Murry,* 277 N.C. 197, 176 S.E. 2d 738. Further, an examination of this record shows that the trial judge adequately charged on the lesser included offense of assault on a female.

Neither do we find merit in defendant's contention that the trial court committed prejudicial error by admitting hearsay testimony. Officer Mark Stabler testified: "I had the High Point city tag, the two numbers they gave me; at that time I called High Point Police department and had a check run on the license number; one of the numbers, 13559, came back to Mr. Ted Jacobs."

[8] The admission of testimony over objection is harmless when the facts sought to be established are admitted by the defendant. *State v. Merritt,* 231 N.C. 59, 55 S.E. 2d 804.

Defendant admitted ownership of the vehicle bearing High Point city tag No. 13559. The only possible prejudice to defendant by admission of the challenged evidence would be to establish ownership of the motor vehicle bearing High Point city tag No. 13559.

In the trial of the case below we find

No error.