STATE OF NORTH CAROLINA v. LAWRENCE STEPNEY

No. 92

(Filed 28 January 1972)

**1. Criminal Law § 91— motion for continuance**

A motion for continuance is ordinarily addressed to the discretion of the trial judge and his ruling thereon is not subject to review absent abuse of discretion.

**2. Criminal Law § 91— motion for continuance — supporting affidavit**

A motion for continuance should be supported by an affidavit showing sufficient grounds.

**3. Criminal Law § 91— absence of witnesses — denial of continuance**

The trial court did not err in the denial of defendant's motion for continuance due to absence of witnesses "located in the area of Chicago" who were allegedly necessary to prove his defense of alibi, where the oral motion was not supported by affidavit or other proof of the names of absent witnesses or what defendant expected to prove by such witnesses.

**4. Constitutional Law § 32; Criminal Law § 66— photographic identification — right to counsel**

A suspect has no constitutional right to the presence of counsel when eyewitnesses are viewing photographs for purposes of identification regardless of whether he is at liberty or in custody at the time.

**5. Criminal Law § 66— identification testimony — general objection**

Upon even a general objection to identification testimony, the trial judge should conduct a voir dire in the absence of the jury, find facts, and thereupon determine the admissibility of in-court identification testimony.

**6. Criminal Law § 66— pretrial photographic identification**

Pretrial photographic procedure was not impermissibly suggestive where both robbery victims observed defendant during the robbery and described defendant and his clothing immediately thereafter, the victims rejected numerous photographs as not being those of the robbers, the victims immediately recognized defendant and another as the robbers upon being shown three additional photographs, and neither victim has ever identified anyone else except defendant and his accomplice.

**7. Criminal Law § 66— pretrial photographic identification — failure to hold voir dire — harmless error**

Failure of the trial court in a robbery prosecution to conduct a voir dire and make findings of fact concerning a pretrial photographic identification procedure was harmless error where the record shows that the photographic identification was free of impermissible suggestiveness, and the evidence is clear and convincing that the in-court identification originated with observation of defendant at the time of the robbery and not with the photographs.

State v. Stepney

**8. Criminal Law § 169— admission of evidence over objection — similar evidence admitted without objection**

The admission of evidence over objection cannot be regarded as prejudicial when testimony of like import is thereafter admitted without objection.

**9. Criminal Law § 162— failure to object**

When there is no objection to the admission of evidence, the question of its competency is foreclosed on appeal.

**10. Criminal Law § 75— spontaneous statements by defendant to officers — failure to waive counsel**

The trial court did not err in the admission of testimony that, while being transported to Central Prison for safekeeping, defendant told officers that he "was sorry that the robbery happened, but that he didn't shoot anybody, that the other man — or another man — had done the shooting," notwithstanding defendant had not waived his right to counsel prior to making the statement, where the court found upon competent evidence that defendant's statement was not in response to any question by the officers but was spontaneously made by defendant.

**11. Criminal Law § 175 — findings of fact — conclusive on appeal**

The findings of the trial court are binding and conclusive in appellate courts in this jurisdiction when supported by competent evidence.

**12. Robbery § 5— sufficiency of instructions**

Contention by defendant that the court's instructions in an armed robbery prosecution were inadequate in that "the jury could have returned a compromise verdict, even though it followed the Court's instructions," *held* without merit.

**13. Assault and Battery § 5; Criminal Law § 26; Robbery § 6— armed robbery — felonious assault during robbery — conviction of both crimes**

Where defendant was tried upon separate indictments charging armed robbery and felonious assault committed during the robbery, and the jury returned verdicts of guilty of armed robbery and guilty of assault with a deadly weapon inflicting serious injury, the trial court could properly pronounce separate judgments for each crime, since an assault with a deadly weapon inflicting serious injury is not a lesser included offense of armed robbery because the infliction of serious injury is not an essential ingredient of armed robbery.

Justices HIGGINS and LAKE concurring in part and dissenting in part.

APPEAL by defendant from *James, J.,* 9 November 1970 Session, CRAVEN Superior Court.

Defendant was charged in separate bills of indictment with armed robbery and felonious assault. The cases were consolidated for trial.

The State's evidence tends to show that on and prior to 25 February 1970 Lillian D. Powell was the manager of the Western Union Office at 414 Broad Street in New Bern, North Carolina. A man named Charles Hampton, Jr., entered the office alone at 1:45 p.m. on that date and "appeared to be making out a money order." He left and returned at 2:15 p.m. accompanied by the defendant Lawrence Stepney. Each had a gun. Hampton entered the area behind the counter, rushed up to Mrs. Powell's desk and said, "This is a stickup, this is a real hold up." Defendant held a gun on Mrs. Powell while Charles Hampton went to the back of the office and "ordered Mr. Harrelson [another Western Union employee] to come and lie down on the floor." Harrelson did so and Hampton "hit him on the back of the head with a gun, and proceeded to tape him up." Hampton then ordered Mrs. Powell to lie on the floor, and he taped her arms and legs while defendant held the gun on her. Hampton then shot Mr. Harrelson in his left leg above the knee and said, "You know I mean business." Defendant then moved about the office pulling out drawers and emptying the safe. All told, the robbers took $484.00 in cash belonging to Western Union, Mrs. Powell's blue Lady Buxton wallet containing $238.00 in cash, Mr. Harrelson's watch and wallet containing $75.00 in cash, six books of Western Union Express Money Orders in hundred-dollar denominations (thirty in each book), and five and one-half books of money order drafts in hundred-dollar denominations (thirty in each book). All the Western Union Express Money Orders bore the stamp "New Bern, North Carolina," and each bore a serial number which had been recorded in the records of the office.

After the robbers left, Mr. Harrelson was taken to the hospital. Officer Bratcher arrived on the scene about 2:20 p.m. He examined the premises and dug a bullet (S-10) from the floor where Mr. Harrelson lay when he was shot. He took possession of a partly filled out Western Union Telegraph Money Order, identified by Mrs. Powell as the one Hampton was filling out when he first entered the office. Thereafter, that same day, Officer Bratcher carried about twenty-five photographs of different persons to the hospital and showed them to Mr. Harrel-

son who could not, and did not, identify any of them. Photographs of defendants Stepney and Charles Hampton were not among this group. Three or four days later Mr. Harrelson was shown three additional photographs (S-7, S-8 and S-9), and he immediately identified S-7 (Charles Hampton, Jr.) and S-9 (Lawrence Stepney) as the robbers.

Officer Bratcher received a telephone call from Detective Smythe of the District of Columbia Police at approximately midnight on 25 February 1970. As a result of that conversation he went to Washington, D. C., about a month later, accompanied by Officer Pate, to return Lawrence Stepney, Charles Hampton, Jr., and Hoyle L. Starks, Jr., to Craven County. At the extradition hearing defendant was wearing an Afro haircut, a blue shirt, brown jacket and checkered pants. They waived extradition and were returned to New Bern, North Carolina. In addition to the three men, the officers brought back from Washington, D. C., the following items: (1) an envelope containing $209.00 in cash; (2) six books of Western Union Money Orders stamped "New Bern, North Carolina" and bearing serial numbers matching the numbers on a list maintained by Mrs. Powell: (3) one blue Lady Buxton wallet containing an identification card bearing the name of Lillian D. Powell of New Bern, North Carolina; (4) one brown man's wallet containing an identification card bearing the name of Daniel Harrelson of Kinston, North Carolina; (5) one expended .22 caliber cartridge and a .22 caliber revolver containing eight live rounds and one empty in the chamber; (6) an envelope containing $50.00 in cash and another containing $149.00 in cash.

Defendant and Hampton were lodged in the Craven County Jail. On 28 April 1970 they escaped and were recaptured three miles west of New Bern on Highway 17. Defendant Lawrence Stepney was shot and injured during his recapture. Following treatment in Craven County Hospital, where a bullet was removed from his body, defendant was taken to Central Prison in Raleigh for safekeeping pending trial. On the trip to Raleigh, while seemingly in a repentant mood, defendant said they really treated him nicely at the hospital; that he was sorry the robbery happened; that he didn't shoot anybody—the other man did the shooting. Upon timely objection by defendant, a voir dire was conducted in the jury's absence to determine admissibility of defendant's statement. Deputy Sheriff Edwards and

Officer Bratcher testified on voir dire for the State, and defendant testified in his own behalf. The court found facts and concluded that the statement was volunteered by defendant who was not being interrogated by the officers, was freely and understandingly made, and was competent. It was admitted before the jury over objection.

Based on her observations at the time of the robbery, Mrs. Powell positively identified defendant and Hampton at the preliminary hearing and, over defendant's objection, in court at the trial. She described defendant as having an Afro haircut, wearing a blue shirt and brown coat and taller than Hampton. "From my observation of the defendant Lawrence Stepney and the person that I saw on that day, there is no doubt at all in my mind that this is the same man, because he held a gun in my face for about five minutes, and I had a good look at him for about five whole minutes. He told me not to look 'round or move; I had to look at him in the face."

### DEFENDANT'S EVIDENCE

Defendant Stepney testified that he left his home in Chicago, Illinois, about 7:30 a.m. on 25 February 1970 going to Washington, D. C., to obtain a job. He traveled with a friend named Frank Robinson in Robinson's car and arrived in Washington, D. C., around 6:30 or 7:00 p.m. that day. He entered a restaurant to phone his family and let them know he had arrived safely in Washington. There, he met Charles Hampton, Jr., whom he had known in Chicago and decided to stay at a motel with him that night. He had not previously known Hoyle Starks, Jr., but met him for the first time at the restaurant. Frank Robinson left to spend the night with his relatives, first dropping defendant off at the Harrington Hotel. Hampton and Starks proceeded to the Harrington Hotel in another car. Defendant went to the desk to register but was told he had to have reservations. Hampton started to call another hotel, and at that time the police entered and arrested them.

Defendant further testified he was brought to New Bern in March 1970, escaped jail, and received a gunshot wound during his recapture on April 29. A bullet was removed from his body at Craven Memorial Hospital on April 30. After five days he was released from the hospital and taken to Raleigh. On the

way to Raleigh with Sheriff Berry and Deputy Edwards, "they did not ask any questions. There was just talk in general. . . . I don't deny saying I was sorry this thing happened; I do deny saying the other man shot him."

Defendant further testified that while he was in the hospital and thought he was going to die, he wrote a letter to the Western Union Company "and told the lady I was sorry this thing happened." He continued to deny, however, that he committed the robbery.

Defendant's mother testified that her son came by her home in Chicago between 6:30 and 7:00 a.m. on the morning of 25 February 1970 and told her he was going to Washington, D. C., with Frank Robinson.

Charles Hampton, Jr., testified that he had been convicted of this robbery but was not guilty; that he was not in New Bern on 25 February 1970; that he arrived in Washington at 10:45 a.m. on that date, riding in a Chrysler belonging to Starks' uncle in Chicago, and had been in Washington seven or eight hours when he first saw defendant Lawrence Stepney; that he was surprised to run into defendant in the Washington restaurant; that he "heard Starks testify in my presence at my trial that he came down here to New Bern in his uncle's car. I heard him so testify after he was intimidated." Hampton's further testimony with respect to events in Washington after meeting defendant corroborates the testimony of defendant in minute detail. He denied that money orders, wallets, and other items stolen from the Western Union Office at New Bern were "taken from a bag where he was standing. They were not in the phone booth where I was making a call."

Defendant was convicted on both charges and sentenced to not less than twenty nor more than twenty-five years for the armed robbery and not less than two nor more than three years for the felonious assault, to run concurrently. He gave notice of appeal, but his appeal was not perfected in apt time. However, his petition for certiorari to bring up a late appeal was allowed by the Court of Appeals in conference on 27 April 1971. The case on appeal was duly docketed in that court on 20 July 1971 and transferred to the Supreme Court for initial appellate review pursuant to our general order dated 31 July 1970.

*E. Lamar Sledge, appointed counsel for defendant appellant.*

*Robert Morgan, Attorney General; James L. Blackburn, Staff Attorney; Walter E. Ricks III, Staff Attorney, for the State of North Carolina.*

HUSKINS, Justice.

Prior to introduction of evidence defendant moved for a continuance due to absence of witnesses "located in the area of Chicago," allegedly necessary to prove his defense of alibi. Denial of the motion constitutes defendant's first assignment of error.

[1, 2] A motion for continuance is ordinarily addressed to the discretion of the trial judge and his ruling thereon is not subject to review absent abuse of discretion. *State v. Stinson,* 267 N.C. 661, 148 S.E. 2d 593 (1966). Continuances should not be granted unless the reasons therefor are fully established. Hence, a motion for continuance should be supported by an affidavit showing sufficient grounds. *State v. Gibson,* 229 N.C. 497, 50 S.E. 2d 520 (1948).

[3] Here, the record recites that defendant attempted through counsel "to obtain statements of the prospective testimony of such persons in regard to defendant's defense of alibi, but without success." No names of absent witnesses are shown. What defendant expected to prove by these witnesses must be surmised. The oral motion is not supported by affidavit or other proof. This state of the record suggests only a natural reluctance to go to trial and affords no basis to conclude that absent witnesses, if such existed, would ever be present for the trial. No abuse of discretion is shown on these facts, and the assignment of error based thereon is overruled.

Defendant contends his in-court identification was tainted by an out-of-court pretrial photographic identification in that (1) he was not represented by counsel and (2) the circumstances surrounding the photographic identification were unnecessarily suggestive and conducive to irreparable mistaken identity. He interposed two objections to Mrs. Powell's references to him and two objections and one motion to strike to the witness Harrelson's references to him. Each witness was positive when identifying defendant as one of the robbers and stated that identification was based on personal observations

State v. Stepney

made of the defendant at the time of the robbery. Without conducting a voir dire the court overruled the objections and denied the motion to strike. The act of the court in this respect constitutes defendant's second assignment of error.

This assignment presents for decision whether the trial court committed prejudicial error in failing to conduct a voir dire examination and make appropriate findings of fact with respect to (1) the procedures employed in the identification process and (2) the origin of the in-court identification.

[4] A suspect has no constitutional right to the presence of counsel when eyewitnesses are viewing photographs for purposes of identification, and this is true regardless of whether he is at liberty or in custody at the time. *State v. Accor and Moore*, 277 N.C. 65, 175 S.E. 2d 583 (1970); *State v. Jacobs*, 277 N.C. 151, 176 S.E. 2d 744 (1970). Such pretrial identification procedure is not a critical stage of the proceeding as delineated in *United States v. Wade*, 388 U.S. 218, 18 L.Ed. 2d 1149, 87 S.Ct. 1926 (1967), and *Gilbert v. California*, 388 U.S. 263, 18 L.Ed. 2d 1178, 87 S.Ct. 1951 (1967).

We held in *State v. Vickers*, 274 N.C. 311, 163 S.E. 2d 481 (1968), that a general objection is sufficient to challenge the admissibility of a *confession*, and failure of the trial judge to conduct a voir dire to determine its voluntariness was prejudicial error requiring a new trial. However, this rule has never been applied directly to pretrial photographic identification procedures.

In *State v. Blackwell*, 276 N.C. 714, 174 S.E. 2d 534 (1970), we said: "In proper cases the voir dire procedure may be invoked concerning identification testimony; however, defendant cannot challenge an in-court identification so as to obtain a voir dire hearing, and a ruling on the offered testimony on the basis that it was 'tainted' by prior photographic identification procedures, a 'lineup,' or other in-custody confrontation without at least, a general objection."

In *State v. Accor and Moore, supra,* we said, *inter alia:* "When the State offers a witness whose testimony tends to identify the defendant as the person who committed the crime charged in the indictment, and the defendant interposes timely objection *and requests a voir dire or asks for an opportunity*

*to 'qualify' the witness,* such voir dire should be conducted in the absence of the jury and the competency of the evidence evaluated. Upon such hearing, if the in-court identification by a witness is challenged on the ground it is tainted by an unlawful out-of-court photographic or corporeal identification, all relevant facts should be elicited and all factual questions determined, including those involving the defendant's constitutional rights, pertinent to the admissibility of the proffered evidence." (Emphasis ours.) A new trial was awarded on the ground that each defendant's photograph was taken while he was being unlawfully detained by the Gastonia Police, then viewed by the State's witnesses and admitted into evidence with the in-court identification of the witnesses, all over the timely and consistent objections of defendants.

In *State v. Williams,* 274 N.C. 328, 163 S.E. 2d 353 (1968), we held that failure of the trial judge to conduct a voir dire and make specific findings of fact concerning the procedures used in a pretrial identification *lineup* will be deemed harmless error where the uncontradicted evidence clearly shows that (1) defendant waived counsel at the lineup, (2) the lineup was conducted fairly and without prejudice, and (3) the in-court identification was independent in origin, based upon what the witness observed at the time of the robbery, and was not fruit of the lineup.

[5, 7] It is apparent from the foregoing decisions that the better procedure dictates that the trial judge, even upon a general objection only, should conduct a voir dire in the absence of the jury, find facts, and thereupon determine the admissibility of in-court identification testimony. *State v. Blackwell, supra* (276 N.C. 714, 174 S.E. 2d 534). Failure to conduct the voir dire, however, does not necessarily render such evidence incompetent. Where, as here, the pretrial viewing of photographs was free of impermissible suggestiveness, and the evidence is clear and convincing that defendant's in-court identification originated with observation of defendant at the time of the robbery and not with the photographs, the failure of the trial court to conduct a voir dire and make findings of fact, as he should have done, must be deemed harmless error. *State v. Williams, supra* (274 N.C. 328, 163 S.E. 2d 353). A different result could not reasonably be expected upon a retrial if all evidence of pretrial photographic identification were excluded.

Identification by photograph was expressly approved in *Simmons v. United States,* 390 U.S. 377, 19 L.Ed. 2d 1247, 88 S.Ct. 967 (1968), where it was held that "each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in *Stovall v. Denno,* 388 U.S. 293, 301-302, 18 L.Ed. 2d 1199, 1206, 87 S.Ct. 1967, and with decisions of other courts on the question of identification by photograph."

[6, 7] Applying the standard enunciated in *Simmons,* we find no impermissible suggestiveness in the photographic identification procedure used in this case. Both victims observed defendant during the course of the robbery—Mrs. Powell observed him intently for five minutes while he held a gun in her face. It may be inferred that she obtained an indelible impression of his facial characteristics. She conversed with him during the robbery and had full opportunity to observe his mannerisms and mode of speech. Both victims described his hair style and his clothing immediately following the robbery. Neither victim has ever identified anyone else save defendant and his accomplice Hampton. Numerous photographs were rejected by these eyewitnesses because they did not fit the mental picture of the robbers obtained at the time of the robbery. Three days after the robbery the photographs of this defendant, Charles Hampton, Jr., and Hoyle Starks, Jr., were lawfully received by mail (presumably from the Washington, D. C. Police Department) and shown to the victims. Defendant and Charles Hampton, Jr., were immediately *recognized* as the two robbers. These three photographs were offered and received in evidence *without objection.* Whether the victims viewed an estimated fifteen to twenty-five photographs one at a time or all at one time is immaterial. Viewed in context and in light of the total circumstances, there is little chance that defendant was incorrectly identified. In our view it is quite obvious from the whole of the evidence that defendant's in-court identification was independent in origin, based upon what the witnesses observed at the time of the robbery, and not upon the photographs. Impermissible suggestive-

ness amounting to a denial of due process has not been shown, and failure of the trial judge to conduct a voir dire must be deemed harmless. *State v. Williams, supra* (274 N.C. 328, 163 S.E. 2d 353) ; *State v. Bell,* 270 N.C. 25, 153 S.E. 2d 741 (1967). We think it was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824 (1967) ; *State v. Brinson,* 277 N.C. 286, 177 S.E. 2d 398 (1970).

[8] Defendant's second assignment must fail for yet another reason. The record discloses that both eyewitnesses implicated defendant as one of the robbers in numerous references on direct as well as cross-examination. Defendant objected to only part of this testimony and moved to strike only once. The admission of evidence over objection cannot be regarded as prejudicial when testimony of like import is thereafter admitted without objection. *Spears v. Randolph,* 241 N.C. 659, 86 S.E. 2d 263 (1955) ; *Davis v. Vaughn,* 243 N.C. 486, 91 S.E. 2d 165 (1956). Defendant's second assignment of error is overruled.

[9] Defendant's third assignment requires no discussion. The photograph in question (S-9) was offered by the State and defendant did not object. When there is no objection to the admission of evidence, the question of its competency is foreclosed on appeal. *State v. Camp,* 266 N.C. 626, 146 S.E. 2d 643 (1966).

While being transferred from Craven County Hospital to Central Prison in Raleigh for safekeeping, defendant allegedly stated to the Sheriff that he was sorry the robbery happened; that he did not shoot anybody—the other man did the shooting. The Sheriff's testimony to that effect was admitted over defendant's timely objection. Defendant argues he had not been warned of his constitutional rights and had not waived his right to the presence of counsel at the time the incriminating statement was allegedly made. He therefore contends this evidence was incompetent and violated his constitutional rights under the due process clause of the Fourteenth Amendment, citing *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602, 10 A.L.R. 3d 974 (1966). We now examine the validity of this assignment.

[10] The Court conducted a voir dire examination in the jury's absence to determine the competency of the challenged evidence. The evidence on voir dire tends to show, and the Court found as a fact, that on 27 March 1970 Officer Bratcher had, in fact,

advised defendant of his constitutional rights as required by *Miranda* at which time defendant stated he wanted a lawyer before discussing the case; that en route to Raleigh, defendant engaged in a general conversation with Sheriff Berry and Deputy Sheriff Edwards and stated in that conversation that "he had been reading a Bible at the hospital and was sorry that the robbery happened, but that he didn't shoot anybody, that the other man—or another man—had done the shooting." The Court found that the quoted statement was not in response to any question by the officers but was spontaneously made by defendant while riding along toward Raleigh. The Court accordingly concluded that the statement was volunteered freely and understandingly and that the defendant was an intelligent, knowledgeable person who fully understood his constitutional rights. The incriminating statement was thereupon admitted into evidence.

[11]  It is settled law that the findings of the trial judge when supported by competent evidence, as here, are binding and conclusive in appellate courts in this jurisdiction. *State v. Gray*, 268 N.C. 69, 150 S.E. 2d 1 (1966); *State v. Harris*, 279 N.C. 307, 182 S.E. 2d 364 (1971); *State v. Morris*, 279 N.C. 477, 183 S.E. 2d 634 (1971). The evidence was properly admitted. Defendant's fourth assignment of error is overruled.

[12]  Defendant's fifth assignment attacks the charge as inadequate to comply with G.S. 1-180. Defendant contends "the jury could have returned a compromise verdict, even though it followed the Court's instructions." This assignment is sheer speculation with no authority cited. A careful examination of the charge reveals no basis for this attack, and the assignment is accordingly overruled.

[13]  In Case No. 70-CR-2250 defendant was convicted of armed robbery as charged. In Case No. 70-CR-2250A defendant was charged with assault with a deadly weapon with intent to kill inflicting serious injury not resulting in death, a felony punishable by imprisonment up to ten years. See G.S. 14-32(a) and G.S. 14-2. He was only convicted, however, of assault with a deadly weapon inflicting serious injury, a felony punishable by imprisonment up to five years under G.S. 14-32(b). Defendant contends the latter conviction is a lesser included offense of armed robbery and, relying on *State v. Hatcher*, 277 N.C. 380, 177 S.E. 2d 892 (1970), assigns as error submission of

the assault charge and pronouncement of a separate judgment on the verdict in that case. This is his sixth assignment of error.

Defendant's position is unsound. An assault with a deadly weapon inflicting serious injury is not a lesser included offense of armed robbery because the infliction of serious injury is not an essential ingredient of the armed robbery charge. It is only when *all* essentials of the lesser offense are included among the essentials of the greater offense that the law merges them into one and treats the less serious charge as a "lesser included offense." Chief Justice Bobbitt, writing for the Court with his usual clarity, recently treated the question of lesser included offenses with finality in *State v. Richardson,* 279 N.C. 621, 185 S.E. 2d 102 (1971). That case is controlling here. Defendant's sixth assignment is overruled.

Defendant has failed to show prejudicial error. The verdicts and judgments must therefore be upheld.

No error.

Justice HIGGINS concurring in Case No. 70 CR 2250 charging armed robbery; dissenting in Case No. 70 CR 2250A charging felonious assault.

Prior to 1919 our statute law provided in cases of assault, with or without intent to kill, any person convicted thereof shall be punished by fine or imprisonment, or both, at the discretion of the courts; provided, where no deadly weapon is used and no serious damage is done, the punishment shall not exceed a fine of fifty dollars or imprisonment for thirty days, but this proviso shall not apply to cases of assault with intent to kill, or with intent to commit rape, or to cases of assault by any man or boy over eighteen years of age on any female person.

By Chapter 101, Public Laws, Session 1919, the General Assembly provided: "That any person who assaults another with a deadly weapon with intent to kill, and inflicts serious injury not resulting in death, shall be guilty of a felony and shall be punished by imprisonment in the State prison or be worked on the county roads for a period of not less than four months nor more than ten years."

In cases in which the indictment charges a felonious assault, the jury, as it finds the facts to be from the evidence,

may convict of a felonious assault as above defined, or an assault with a deadly weapon, or a simple assault. Upon failure to find either the use of a deadly weapon, or the intent to kill, or serious injury, the verdict at most could be guilty of assault with a deadly weapon (a misdemeanor); or if the jury should fail to find the use of a deadly weapon, then at most the verdict could be guilty of assault. *State v. Weaver*, 264 N.C. 681, 142 S.E. 2d 633; *State v. Jones*, 264 N.C. 134, 141 S.E. 2d 27; *State v. Jones*, 258 N.C. 89, 128 S.E. 2d 1; *State v. Cody*, 225 N.C. 38, 33 S.E. 2d 71.

The offense in this case occurred in February, 1970, and must be tried according to the law in effect as of that date. The 1971 statutes are not applicable.

Without question, however, in this case the robbery and the assault are parts of a single transaction. This Court has held in *State v. Hatcher*, 277 N.C. 380, 177 S.E. 2d 892, and in *State v. Parker*, 262 N.C. 679, 138 S.E. 2d 496, that an assault with a deadly weapon committed in the course of a robbery is a part of and included in the indictment for armed robbery. If a verdict of guilty of assault with a deadly weapon is returned and judgment entered thereon, the judgment will be arrested on the ground of double jeopardy.

Wharton's Criminal Law and Procedure, Vol. 1, Sec. 148, states the rule:

> "It is generally agreed that if a person is tried for a greater offense, he cannot be tried thereafter for a lesser offense necessarily involved in, and a part of, the greater, at least when, under the indictment for the greater offense, the defendant could have been convicted of the lesser offense."

Justice Moore in *State v. Birckhead*, 256 N.C. 494, 124 S.E. 2d 838, stated the rule:

> " . . . (W)hen an offense is a necessary element in and constitutes an essential part of another offense, and both are in fact but one transaction, a conviction or acquittal of one is a bar to a prosecution to the other."

Chief Justice Stacy in *State v. Bell,* 205 N.C. 225, 171 S.E. 50, stated the rule:

"The principle to be extracted from well-considered cases is that by the term, 'same offense,' is not only meant the same offense as an entity and designated as such by legal name, but also any integral part of such offense which may subject an offender to indictment and punishment.

When such integral part of the principal offense is not a distinct affair, but grows out of the same transaction, then an acquittal or conviction of an offender for the lesser offense will bar a prosecution for the greater."

Further authorities are cited and discussed in the dissenting opinion in *State v. Richardson,* 279 N.C. 621, 185 S.E. 2d 102.

Assault with a deadly weapon with intent to kill inflicting serious injury not resulting in death is a felony. However, if the injury is not serious, all other elements being present, the offense is only a misdemeanor. In the Hatcher and Parker cases the Court held a misdemeanor assault was included in the armed robbery indictment and a separate judgment for assault with a deadly weapon should be arrested. In this case, as in Richardson, the Court is holding a felonious assault is not included in the armed robbery indictment and the judgment should not be arrested. A mite more or less injury makes the difference.

Under the present holdings, the trial judge will have some difficulty charging the jury in assault cases which constitute a part of armed robbery. I anticipate the charge must go something like this: If you return a verdict of guilty on the armed robbery charge, you will then consider the felonious assault charge. If you find from the evidence beyond a reasonable doubt the defendant assaulted the victim with a deadly weapon with intent to kill, inflicting serious injury not resulting in death, you will return a verdict of guilty of felonious assault. But if you do find the defendant assaulted the victim with a deadly weapon with intent to kill, but failed to find the defendant inflicted serious injury, you will acquit him because the misdemeanor assault was a part of the armed robbery charge.

Heretofore in other felonious assault cases, the Court has charged that if you fail to find the defendant guilty of a felonious assault, as the Court has defined that offense, you would then determine whether the defendant is guilty of the lesser

included offense of assault with a deadly weapon. You cannot convict of assault with a deadly weapon in this case. The Supreme Court in its wisdom has said in an armed robbery case the misdemeanor assault is included, but the felonious assault is not included.

The maximum punishment for armed robbery is the same as it is in the most aggravated case of murder in the second degree. It is three times the maximum for common law robbery. It is three times the maximum for assault with a deadly weapon with intent to kill inflicting serious injury. One of the Senators who assisted in the passage of the armed robbery statute in 1929 thought the punishment provided was sufficient to enable the court to impose adequate punishment for all the injury resulting from the use of the weapon in armed robbery unless the victim's death resulted, in which event the prosecution would be for first degree murder.

Other legal authorities which fortify my belief the judgment in the assault case should be arrested, are cited and analyzed in the dissent to *State v. Richardson.* These include cases from other jurisdictions.

Justice LAKE concurring in part and dissenting in part.

I concur as to the conviction of and sentence for armed robbery in Case No. 70-CR-2250.

I dissent as to the conviction of and sentence for assault with a deadly weapon inflicting serious injury in Case No. 70-CR-2250A for the reasons set forth in my concurring opinion in *State v. Richardson,* 279 N.C. 621, 633, 185 S.E. 2d 102, 115.

Here, the shooting of Harrelson occurred while the robbery was in progress and as part of it, which distinguishes this case from *State v. Richardson, supra,* where the robbery was complete before the shooting of the victim occurred. Harrelson being named in the indictment for armed robbery, as a victim thereof whose life was endangered by the defendant's use of the pistol as the means of perpetrating the robbery, the State cannot, in my opinion, use the same assault again as an element of another criminal offense against Harrelson.