STATE OF NORTH CAROLINA v. LARRY DONNELL ANDERSON

No. 838SC617

(Filed 21 February 1984)

**Criminal Law § 66.9— photographic identification procedure—objections and arguments on appeal failing to address properness of procedure**

On the basis of the record, there was nothing to indicate that a pretrial photographic identification procedure was improper, and, if through his brief, defendant tried to challenge the admission of in-court eyewitness identification by the prosecuting witness in that her testimony was confused and contradictory, defendant failed to properly raise this issue by failing to object or except in the record to the prosecuting witness's in-court identification.

APPEAL by defendant from *Phillips, Judge.* Judgment entered 2 February 1983 in Superior Court, LENOIR County. Heard in the Court of Appeals 12 January 1984.

*Attorney General Edmisten by Assistant Attorney General W. Dale Talbert for the State.*

*Assistant Appellate Defender Malcolm Ray Hunter, Jr., for defendant appellant.*

BRASWELL, Judge.

In a trial for first-degree burglary, the defendant was convicted of misdemeanor breaking or entering and received an ac-

tive sentence of two years less credit for jail time. The brief brings forward one assignment of error. "Did the trial court err by failing to conduct a *voir dire* prior to overruling the defendant's objection to evidence of eyewitness identification of the defendant as the perpetrator of the crime?" Under the circumstances here, we answer "no."

The prosecuting witness, Ms. Geraldine Bruington, awakened from her sleep about 2:00 or 2:30 a.m. on 24 July 1982 at her home on South Orion Street in Kinston, saw a man standing over her bed. She screamed; both ran from the house, he to go elsewhere, and she to call the police.

The next day at the police station Ms. Bruington viewed a photographic lineup and picked out a picture of the defendant as being the intruder. The defendant testified that he had never been in Ms. Bruington's house.

The objection to evidence came during the use by the State of State's Exhibit No. 1, which was a folder containing the photographs used by the police as viewed by Ms. Bruington on the day after the incident. The transcript reveals how the objection occurred.

Q. Mrs. Bruington, look at what's been marked as State's Exhibit Number 1; do you recognize that?

Objection.

Court: Sir?

Mr. Marcus: May I approach the bench?

Court: Yes. (A discussion is held)

Mr. Marcus: Your Honor, I object to all this line of questions.

Court: Overruled.

Subsequently, Ms. Bruington testified that she saw the exhibit when Sgt. Heath showed the pictures to her at the police department, and from them "I picked out the one that was in my house." She wrote her name, time, and the date under one picture, which is that of the defendant.

Thereafter, Ms. Bruington was questioned about her education. Then, she was asked if the person who was in her bedroom that night was in the courtroom. She pointed out the defendant as that person. There was no objection to this in-court identification.

Trial defense counsel, who is not the counsel on appeal, conducted an extensive cross-examination of Ms. Bruington covering 37 pages in the transcript. After the night's recess, she having been the last witness the previous day, the court said: "And I think the cross-examination had [sic] ended. Is there anything further on cross, Mr. Marcus? [Defense Counsel] Mr. Marcus: Not at this time." The State's direct examination covers 13 pages in the transcript. There was no redirect examination. During the cross-examination the subject of the photographic identification at the police station was not mentioned in any manner. The court did not restrict the defendant's right to ask any type of questions during cross-examination.

Kinston Police Sergeant Cranford Heath testified to his conversation with Ms. Bruington at the police department on the morning after the incident. During Heath's direct examination the following took place:

Q. What occurred at the police department?

A. I had a photographic lineup consisting of—

    Court: Does the State plan to pursue this?

    Mrs. Barwick: Yes, sir.

    Court: Could I speak with you here. (A discussion is held) The defendant makes an objection and the objection is overruled, and the defendant is allowed a continuing objection to the State's photographic identification.

Thereafter the witness described his preparation of State's Exhibit No. 1, the photographic lineup of five photographs in a folder, and that Ms. Bruington picked out the second photograph, which was the defendant's. At the conclusion of this direct testimony the State moved to introduce the exhibit into evidence, the defendant made a general objection which was overruled, and the photographs were admitted into evidence.

In defendant's brief we note this apparent concession: "Police Sergeant Heath's description of the photo lineup procedure (put

State v. Anderson

into evidence over defendant's continuing objection) tended to show the procedure was proper." [Parenthetic matter in the original.] The real contention appears to be that Ms. Bruington's testimony was confused and contradictory, and thus not credible. The evidence shows that even though she had seen the defendant two or three times before the night in question and had told the initial investigating officers she knew the man but couldn't remember his name, the next morning she was able to identify the intruder as Larry Anderson, the defendant. During cross-examination of a neighbor, Marquetta Miles, who had seen a man run from the back of Ms. Bruington's house at the time, responded that the defendant "really doesn't look like the man that I saw." A defense witness, Jevan Anderson, related a post-offense conversation with Ms. Bruington in which she told him that the intruder never actually entered the house and that she did not know who he was. In her own testimony Ms. Bruington told how she knew the defendant socially and how he once had bought a beer for her.

There is a problem with the way the subject matter of the assignment of error is designated. If by the words used it is meant that the challenge on appeal is to the admission of evidence of in-court eyewitness identification by Ms. Bruington, then we point out that there was no objection or exception in the record to her in-court identification of the defendant. If the assignment of error is meant to challenge the admissibility of the photographs, State's Exhibit No. 1, by the making of a general objection, followed by an objection to the general line of questions and if it be conceded that the general objection was sufficient to raise the issue of whether the out-of-court photographic lineup identification procedure was proper, then on the record before us we are compelled to conclude, as defendant apparently did in his brief, that the procedure was proper. Even on appeal there are no specific challenges to any of the procedures of the out-of-court photographic identification. The thrust of the argument is that Ms. Bruington's testimony "was confused and contradictory" as a whole. The issue of credibility of the prosecutrix was tested by a thorough cross-examination and believability was solely within the province of the jury.

Defendant argues further "that there *might* be a legitimate question as to the suggestiveness of the photo display or the in-

dependent basis of the in-court identification." [Emphasis in original.] However, this jury through other witnesses had heard testimony which directly tended to impeach Ms. Bruington's testimony that the defendant was the perpetrator of the crime. In spite of the absence of a *voir dire*, the issue of reliability of the identification lies within the province of the jury, and their acceptance or rejection of her credibility was a determination for them alone.

The defendant holds up the case of *State v. Stepney*, 280 N.C. 306, 185 S.E. 2d 844 (1972), as placing a duty on the trial judge to hold a *voir dire* upon a general objection. We feel that the defendant has misconstrued that case. As explained in *Stepney*, at 313, 185 S.E. 2d at 849, "a general objection is sufficient to challenge the admissibility of a *confession*, and failure of the trial judge to conduct a voir dire to determine its voluntariness was prejudicial error requiring a new trial." [Emphasis in original.] The Supreme Court went on to say: "However, this rule has never been applied directly to pretrial photographic identification procedures." *Id.* Thereafter, *Stepney* suggests as the best policy that even upon a general objection a *voir dire* should be conducted, but that "[f]ailure to conduct the voir dire, however, does not necessarily render such evidence incompetent." *Id.* at 314, 185 S.E. 2d at 850. As in *Stepney* we hold that "[a] different result could not reasonably be expected upon a retrial if all evidence of pretrial photographic identification were excluded." *Id.* The failure to hold a *voir dire* is deemed to be harmless error.

Trusting that some additional observations about objections would be useful, we extract the following from Braswell, *Objections—Howls of A Dog-Pound Quarrel*, 4 Campbell L. Rev. 339 (1982):

By objecting, ". . . the opponent merely invokes the law; if it is applicable to the evidence, the proponent must make the evidence satisfy the law." The party who makes the objection has an affirmative duty, concisely and without argument, to tell the court and the offering counsel the "rule or rules of evidence he contends has been violated." *Id.* at 360.

Because the ground for ruling on an objection is not always apparent to either judge or opposing counsel, the judge needs help and guidance from the objecting parties.

This need can be met by requiring all objections to be specific. This requirement takes away the element of surprise, ultimately allows the jury to hear more facts from the witness, and reduces inadvertent errors in the ruling of the trial judge because he then has knowledge of the very ground upon which the objecting party relied. Thus, the number of mistrials and new trials would be reduced as errors in the reception or rejection of evidence are eliminated, and the losing party at trial might not appeal if, on a later study of the transcript, he was convinced the trial judge correctly applied the appropriate rules. *Id.* at 345.

No error.

Judges HEDRICK and EAGLES concur.